[713 NYS2d 361]

GREGORY P. PETERSON, Respondent, v ROGER H. CORBIN et al., Appellants.

Second Department, September 25, 2000

**APPEARANCES OF COUNSEL**

*Jaspan Schlesinger Hoffman, L. L. P.,* Garden City (*Stanley Harwood, Stephen R. Schlesinger* and *Scott B. Fisher* of counsel), and *Frederick K. Brewington,* Hempstead, for appellants. (One brief filed.)

*Ryan & Brennan, L. L. P.,* Floral Park (*John E. Ryan* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

On this appeal, we must determine whether the defendant Roger H. Corbin, a Nassau County Legislator, should be preliminarily enjoined from voting on the appointment of members to the board of directors of the Nassau County Regional Off-Track Betting Corporation (hereinafter the Nassau OTB).

By order to show cause dated May 10, 2000, the plaintiff Gregory P. Peterson, the President of the Nassau OTB, commenced this action against Corbin and the Nassau County Legislature, seeking (1) a judgment declaring that Corbin must recuse himself from voting as a Legislator on any appointment to the board of directors of the Nassau OTB, and (2) to permanently enjoin the Nassau County Legislature from conducting any vote on the appointment to the board of directors of the Nassau OTB. Peterson alleged that Corbin's employment as a branch manager for the New York City Off-Track Betting Corporation (hereinafter NYC-OTB) and membership in Local 858 of the International Brotherhood of Teamsters (hereinafter Local 858), which represents all of the employees of the Nassau OTB and the branch managers of NYC-OTB,

presented Corbin with interests which conflicted with his duties as a Nassau County Legislator, in violation of the Nassau County Code of Ethics (Nassau County Charter, tit XXII, § 2218).

Following a hearing on May 15, 2000, the date on which the vote was scheduled to take place, the Supreme Court issued a preliminary injunction against Corbin enjoining, restraining, and staying him from voting on the appointment to the board of directors of Nassau OTB after finding the existence of an "appearance of impropriety." We reverse.

To obtain the drastic remedy of a preliminary injunction, a movant must demonstrate (1) a likelihood or probability of success on the merits, (2) irreparable harm if the injunction is denied, and (3) a balance of the equities in favor of granting the injunction (see, Aetna Ins. Co. v Capasso, 75 NY2d 860; Grant Co. v Srogi, 52 NY2d 496). We agree with Corbin's contention that Peterson did not meet this "particularly high" burden (Council of City of N. Y. v Giuliani, 248 AD2d 1, 4).

While it is true that Peterson was not required to establish the certainty of success on the merits but merely the likelihood of success, we have said that: "Preliminary injunctive relief is a drastic remedy which will not be granted 'unless a clear right thereto is established under the law and the undisputed facts upon the moving papers, and the burden of showing an undisputed right rests upon the movant' " (Nalitt v City of New York, 138 AD2d 580, 581, quoting First Natl. Bank v Highland Hardwoods, 98 AD2d 924, 926).

Thus, Peterson was required to demonstrate a likelihood of success on the merits by making a prima facie showing, at least by affidavits, if not by testimony, of conflicts of interest. However, the only showing Peterson made is found in his conclusory affidavit in support of the application for the order to show cause, and in the testimony of John Nagy, general counsel for the Nassau OTB. Nagy's testimony consisted primarily of hearsay, and was significantly impeached by cross-examination, as well as by the testimony of Barbara Reda, president of Local 858. Clearly, this was not sufficient to enjoin a duly elected member of the Nassau County Legislature from exercising his statutory right to vote for the appointment of members of the board of directors of the Nassau OTB (see, Racing, Pari-Mutuel Wagering and Breeding Law § 502 [1]).

By contrast, in opposing Peterson's motion for a preliminary injunction, Corbin relied on Reda's testimony demonstrating that, as a branch manager of NYC-OTB, Corbin does not hold

a policy-making position and that as a mere member of Local 858, Corbin is not a member of the negotiating team. Corbin also relied on a report by the Nassau County Ethics Board, which had considered whether Corbin's vote for directors of the Nassau OTB would be prohibited by Nassau County Charter § 2218 (1) (a) (3) and its comparable Administrative Code section. By a divided vote of five members, the majority held: "We do not find that Mr. Corbin's vote for, or against candidates for appointment to the Board of Directors of the Nassau OTB may create a prohibited conflict with his official duties as a Nassau County Legislator. Accordingly, Mr. Corbin is not required to recuse himself, and he may vote on the Nassau OTB appointments."

Accordingly, Peterson did not make a sufficient showing as to conflicts of interest. Also, his reliance on *Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd.* (69 AD2d 320) and *Matter of Zagoreos v Conklin* (109 AD2d 281) is misplaced. Those cases are distinguishable on the all-important factor of whether the questioned official benefited directly and individually from the action that was taken.

To begin with, in *Tuxedo*, the "lame duck" town board, which included a member named Martineau, voted to grant necessary preliminary approval to Sterling Forest Development Corp. (hereinafter Sterling) to construct a 3,900-unit residential development. In *Zagoreos*, Orange and Rockland Utilities, Inc. sought certain permits and variances in order to convert two oil-burning generating units into coal-burning units. During the course of the proceedings in *Zagoreos*, certain members of the town board and the board of zoning appeals, who were also employees of Orange and Rockland Utilities, Inc., voted. Importantly, the claim in each case was that the votes, which had been already cast, were tainted as the result of conflicts of interest. In this case, however, Peterson made a "pre-emptive strike" to prevent a public officer from acting based on claimed conflicts of interest even though, absent extraordinary circumstances, the courts are not to enjoin the legislative process (*see, Pospisil v Anderson,* 140 AD2d 317; *Matter of One Pelham Rd. Co. v Paduano,* 123 AD2d 768; *H. Dev. Corp. v City of Yonkers,* 64 AD2d 690; *see also,* 13 Weinstein-Korn-Miller, NY Civ Prac ¶ 6301.32).

More significantly, in both *Tuxedo* and *Zagoreos*, the conflicts of interest on the part of the public officials were clear and obvious. In *Tuxedo*, the residential development had been hotly debated for three years, as it would result in increasing the

town's population more than four hundred percent. Preliminary matters, including the State Environmental Quality Review Act, had been referred to the planning board, and while that body was actively considering it, it became clear that a study would not be concluded by January 1, 1978. In December 1977, the "lame duck" town board passed a local law transferring authority over the development from the planning board to the town board. On December 28, 1977, the town board voted to grant all the preliminary approvals to Sterling, and the controlling vote was cast by Martineau, who was vice-president of an advertising agency that had City Investing Corp., of which Sterling was a wholly owned subsidiary, as a client. In *Zagoreos*, votes benefiting Orange and Rockland Utilities, Inc. were cast by public officials who were employees of Orange and Rockland Utilities, Inc.

In this case, Corbin's employment as a NYC-OTB branch manager and his position as a member of the Nassau County Legislature pose no conflict since there is nothing in the record indicating dealings between NYC-OTB and the Nassau County Legislature. Also, while Corbin is a member of Local 858, he is not an officer or member of the negotiating team of that union. In addition, while Local 858 also represents the Nassau OTB employees, there is no connection between the contracts reached by Local 858 and the two OTBs. There is evidence in the record that there are two negotiating units within Local 858; one dealing with NYC-OTB branch managers and the other dealing with all the Nassau OTB employees.

Peterson's contention that Corbin's employment with NYC-OTB may in the future benefit from his vote for directors of the Nassau OTB is not only unpersuasive but it is also completely speculative (*see, Town of N. Hempstead v Village of N. Hills,* 38 NY2d 334).

It is also obvious that Peterson failed in his burden to show that he would suffer irreparable harm if this preliminary injunction was not issued. At no point in either his papers or at the hearing before the Supreme Court did Peterson claim that there would be any "harm" other than a violation of Nassau County Code of Ethics. That statute was enacted for the benefit of the general public, and anyone seeking to enjoin a violation of the statute must show that he will sustain special damages (*see,* 13 Weinstein-Korn-Miller, NY Civ Prac ¶ 6301.08).

Further, even if we assume, without evidence, that Peterson will not be reappointed to the board of directors of the Nassau

OTB as a result of Corbin's decisive vote, this could not be considered irreparable harm. Notably, Peterson holds that position as the result of his appointment by that same legislative body and continues in that position at the pleasure of that body (*see*, Racing, Pari-Mutuel Wagering and Breeding Law § 502 [1]). Peterson does not have a protected property interest in his position as a director of the Nassau OTB. Moreover, he would not be without an adequate remedy since a preliminary injunction is a provisional remedy and a decision concerning a preliminary injunction does *not* become the law of the case, nor would it constitute an adjudication on the merits so as to preclude reconsideration of that issue at a trial on the merits (*see, Preston Corp. v Fabrication Enters.*, 68 NY2d 397; *Bauer v Planning Bd.*, 159 AD2d 532; *Ratner v Fountains Clove Rd. Apts.*, 118 AD2d 843).

Lastly, as to a balancing of the equities, on the one hand, Peterson has not demonstrated any potential harm in the absence of a preliminary injunction while, on the other hand, if a preliminary injunction is granted, a duly elected member of the County Legislature will be enjoined from performing an act he is directed to perform by State law. If the County Legislature, with the exception of Corbin, was to vote for the appointment of directors of the Nassau OTB, the residents of the Second Legislative District would be without representation as to that vote. Therefore, the order is reversed, insofar as appealed from, on the law, without costs or disbursements, and the motion for a preliminary injunction is denied.

GOLDSTEIN, J. (dissenting). The decision to grant a preliminary injunction is a matter ordinarily committed to the sound discretion of the court hearing the motion (*see, Doe v Axelrod*, 73 NY2d 748, 750). The movant must establish a likelihood of ultimate success on the merits, irreparable injury absent the injunction, and a balancing of the equities in the movant's favor (*see, Egan v New York Care Plus Ins. Co.*, 266 AD2d 600). "[E]ven when facts are in dispute, the * * * court can find that a plaintiff has a likelihood of success on the merits, from the evidence presented, though such evidence may not be 'conclusive' " (*Sau Thi Ma v Xuan T. Lien*, 198 AD2d 186, 187, quoting *Demartini v Chatham Green*, 169 AD2d 689, 690). "Thus a preliminary injunction, even when issued after an evidentiary hearing, depends upon probabilities, any or all of which may be disproven when the action is tried on the merits, and the affirmance of an order granting a preliminary injunction determines no more than that the discretion exercised in favor

of granting the order was not based upon a demonstration of those probabilities so insufficient as to constitute an abuse of discretion" (*Preston Corp. v Fabrication Enters.*, 68 NY2d 397, 406). Where the denial of a preliminary injunction would disturb the status quo and render the final judgment ineffectual, the degree of proof required to establish the element of likelihood of success on the merits should be reduced (*see, State of New York v City of New York*, 275 AD2d 740).

Viewed from this perspective, it cannot be said that the decision of the Supreme Court granting the plaintiff's motion for a preliminary injunction was an improvident exercise of discretion (*see, State of New York v City of New York, supra; Nelson, L. P. v Jannace*, 248 AD2d 448).

The undisputed facts in the record are that the appellant Roger H. Corbin is the branch manager of the New York City Off-Track Betting facility in Astoria, Queens. He is not classified as a management and/or confidential employee, but is responsible for the entire operation of that branch office. The New York City Off-Track Betting Corporation and the Nassau County Regional Off-Track Betting Corporation are separate corporations.

In 1993, the Chief Deputy County Attorney of Nassau County concluded that Corbin's employment as branch manager for the New York City Off-Track Betting Corporation made him a "public officer" who was precluded from serving as a member of the board of directors of the Nassau County Regional Off-Track Betting Corporation, because doing so would constitute a conflict of interest pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 107.

The question of whether Corbin's voting, in his capacity as a Nassau County Legislator, on appointments to the board of directors of the Nassau County Regional Off-Track Betting Corporation may constitute a conflict of interest was submitted to the Nassau County Board of Ethics (hereinafter the Board). The Board determined, by divided 3-to-2 vote, that voting on such appointments did not create a prohibited conflict, because Corbin did not influence policy and did not engage in labor negotiations.

The minority noted that in 1995, the Nassau County Code of Ethics was amended to require recusal from participation in conduct which *may* result in a conflict with his official duties (*see*, Nassau County Charter § 2218 [1] [b]).

At the hearing on the application for a preliminary injunction, John Nagy, general counsel for the Nassau County Regional Off-Track Betting Corporation, testified that employees of the New York City Off-Track Betting Corporation and the Nassau County Regional Off-Track Betting Corporation are represented by the same union, Teamsters Local 858, and the same chief labor negotiator. During labor negotiations, the union would refer to the New York City contract in negotiating the Nassau County contract.

The New York City Off-Track Betting Corporation's branches near Nassau County were in direct competition with the Nassau County Regional Off-Track Betting Corporation. Further, the Nassau County Regional Off-Track Betting Corporation was considering establishing additional branches closer to the border with New York City and thus in competition with Corbin's branch.

The Supreme Court granted the preliminary injunction, holding that the plaintiff was likely to succeed on the merits of his contention that Corbin's voting on appointments to the board of directors of the Nassau County Regional Off-Track Betting Corporation might constitute a conflict of interest and created the appearance of impropriety.

The test for disqualifying Corbin from voting is not whether there is a conflict, but whether there might be (see, Nassau County Charter § 2218 [1] [b]; Matter of Zagoreos v Conklin, 109 AD2d 281; Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd., 69 AD2d 320).

In view of the evidence of a potential conflict of interest, a preliminary injunction was necessary to avoid the appearance of impropriety to maintain public confidence in the administration of government (see, 1999 Atty Gen [Inf Opns] 42; 1999 Atty Gen [Inf Opns] 21).

Where county legislators hold employment in the public sector which is incompatible with their duties, they may be compelled to resign from either the legislative position or their employment if the potential conflict involves a significant aspect of the Legislature's responsibilities (see, Matter of Dupras v County of Clinton, 213 AD2d 952). In the instant case, the plaintiff did not seek Corbin's resignation. However, the facts presented a basis for recusal from the vote in issue (see, Annotation, Public Officers—Personal Interest, 133 ALR 1257). There is no merit to the contention that the preliminary injunction violates the doctrine of separation of powers (see, Matter of Dupras v County of Clinton, supra).

Nor is there any merit to the contention that there will be no irreparable harm if the preliminary injunction is not granted. At oral argument, the appellants conceded Peterson's standing to bring this action. In view of our acceptance of that concession, it is clear that Peterson was not required to demonstrate that he suffered special damages from a violation of the Nassau County Code of Ethics.

The majority acknowledges that Peterson serves as a member of the Nassau County Regional Off-Track Betting Corporation "at the pleasure" of the Nassau County Legislature (Racing, Pari-Mutuel Wagering and Breeding Law § 502 [1]), which may, with the benefit of Corbin's vote, appoint a successor to Peterson. It is not at all clear that, if the Nassau County Legislature appoints a successor to Peterson, Peterson could retain his seat by seeking injunctive relief at that time. The granting of a preliminary injunction preserves the status quo, avoids such procedural uncertainties, and preserves confidence in government. "[T]he equities lie in favor of preserving the status quo while the legal issues are determined in a deliberate and judicial manner" (*State of New York v City of New York, supra*, at 741).

In view of the foregoing, it cannot be said that the Supreme Court improvidently exercised its discretion in issuing a preliminary injunction (*see, State of New York v City of New York, supra*).

THOMPSON and KRAUSMAN, JJ., concur with SULLIVAN, J.; GOLDSTEIN, J., and MANGANO, P. J., dissent and vote to affirm the order appealed from in a separate opinion by GOLDSTEIN, J.

Ordered that the order entered June 2, 2000 is reversed, on the law, without costs or disbursements, and the motion for a preliminary injunction is denied.