[873 NYS2d 9]

CITY OF NEW YORK et al., Respondents, v 330 CONTINENTAL LLC et al., Appellants.

First Department, January 29, 2009

## APPEARANCES OF COUNSEL

*Loeb & Loeb LLP*, New York City (*David M. Satnick* and *Helen Gavaris* of counsel), and *Cozen O'Connor*, New York City (*Menachem J. Kastner* of counsel), for 330 Continental LLC and others, appellants.

*Herrick, Feinstein LLP*, New York City (*Scott E. Mollen* and *John P. Sheridan* of counsel), and *Miller & Barondess, LLP*, Los Angeles, California (*Robert H. Freilich* of counsel), for 315 Montroyal LLC, appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Deborah A. Brenner, Barry P. Schwartz, Deborah Rand* and *Mary O'Sullivan* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

For the better part of a century, some of the units in three single room occupancy apartment hotels on the Upper West Side of Manhattan have been rented out as short-term accommodations for tourists and others temporarily staying in the City of New York. This appeal requires us to consider how this practice is affected by the complex web of rules formed by the City's zoning resolutions dating back to 1916, the Multiple Dwelling Law, and the City's Administrative Code. The City is seeking to put an end to the rental of rooms in the subject buildings for short-term occupancy, arguing that the use of any portion of the buildings for this purpose violates current zoning restrictions and the buildings' certificates of occupancy. We conclude that the City has not demonstrated an entitlement to a preliminary injunction stopping this activity.

The three subject buildings are seven-story single room occupancy (SRO) apartment hotels (*see* Multiple Dwelling Law § 4

■ [defining "single room occupancy"]). The Continental, located at 330 West 95th Street, has 207 SRO units; the Montroyal, located at 315 West 94th Street, has 200 SRO units; and the Pennington, located at 316 West 95th Street, has 184 SRO units. The record reflects that, in each of the three buildings, certain SRO units are rented to tenants for permanent occupancy, and other SRO units are rented to tourists on a short-term basis. Defendants, the owners and managers of the buildings, advertise the buildings as offering short-term accommodations to tourists on travel-oriented Web sites such as Orbitz.com, Expedia.com, Hotels.com and Yahoo Travel.

The record establishes that the rental of units within the buildings for short-term, nonpermanent occupancy is a practice with a long history, dating back to the 1940s, if not earlier. The longstanding practice of renting rooms in the buildings for short-term occupancy, including to overnight lodgers, is documented by such contemporaneous evidence in the record as the daily registers that were maintained for the buildings for the years 1941, 1945, 1948 and 1950, and by the buildings' listings and advertisements in the Manhattan "Yellow Pages" during the same time period.

The buildings are situated in an area designated by the City's Zoning Resolution of 1961, as amended (the ZR), as an R8 general residence district (*see* City of New York Zoning Map 5d, incorporated by ZR § 11-14). Each building's certificate of occupancy provides, either expressly or by implication, that the building is a class A multiple dwelling.[1] A class A multiple dwelling is defined by the Multiple Dwelling Law as "a multiple dwelling which is occupied, as a rule, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a]; *see also* Multiple Dwelling Law § 4 [16] ["When a class A multiple dwelling is used wholly or in part for single room occupancy, it remains a class A multiple dwelling"]; *compare* Multiple Dwelling Law § 4 [9] [defining a class B multiple dwelling as one "which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals"]).

---

1. The Continental and the Montroyal each has a certificate of occupancy describing it as a class A multiple dwelling. While the Pennington's certificate of occupancy describes it as a "New Law Tenement Single Room Occupancy," without specifying the building's class, Multiple Dwelling Law § 4 (8) (a) provides that "tenements" are included within the category of class A multiple dwellings. In any event, defendants do not dispute that all three buildings are class A multiple dwellings.

Plaintiffs (the City, its Department of Buildings and its Department of Housing Preservation and Development [collectively, the City]) brought this action seeking, inter alia, to enjoin defendants from renting any units within the buildings for periods of less than 30 days. The City refers to occupancies of less than 30 days as "transient occupancy," a phrase that apparently is not defined in any statute, ordinance, resolution, regulation, advisory opinion or administrative notice. The City argues that the rental of units within the buildings for "transient occupancy" (i.e., occupancy of less than 30 days) violates the ZR. Under the ZR, "apartment hotels" (defined as buildings in which "the dwelling units or rooming units are used primarily for permanent occupancy" [ZR § 12-10]) are permitted within a general residence district, but "transient hotels" (defined as buildings in which "living or sleeping accommodations are used primarily for transient occupancy, and may be rented on a daily basis" [id.]) are not.[2] The City also argues that the rental of units within each of the buildings for "transient occupancy" (again, as defined by the City) violates that building's status as a class A multiple dwelling under its certificate of occupancy, in that, as previously noted, a class A multiple dwelling is defined by statute as "a multiple dwelling which is occupied, as a rule, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a]).

Contending that a violation of the ZR or of a building's certificate of occupancy constitutes a public nuisance (see Administrative Code of City of NY [hereinafter, Administrative Code] § 7-703 [d], [k]; see also City of New York v Bilynn Realty Corp., 118 AD2d 511, 513 [1986]), the City moved for a preliminary injunction (see Administrative Code § 7-707) against, inter alia, rental of any units in the subject buildings for periods of less than 30 days, and for appointment of a temporary receiver. Defendants opposed the City's motion and cross-moved to dismiss the first, second and fourth causes of action pleaded in the City's complaint, which are predicated on the contention that it is unlawful to rent any unit within the buildings for a period of less than 30 days. The motion court granted the City the requested preliminary injunction, denied the motion for appointment of a temporary receiver, and denied defendants' cross

2. See ZR § 22-00 (permitting Use Groups 1, 2, 3, and 4 in general residence districts); ZR § 22-12 (providing that apartment hotels are within Use Group 2); ZR § 32-14 (providing that transient hotels are within Use Group 5).

motion to dismiss (18 Misc 3d 381 [2007]). On defendants' appeal, we modify the motion court's order (enforcement of which was stayed pending appeal by order of this Court entered December 6, 2007) to deny the preliminary injunctive relief challenged by defendants.[3]

To be entitled to a preliminary injunction, the City was required to demonstrate a likelihood of ultimate success on the merits, irreparable injury in the absence of provisional relief, and a balancing of the equities in its favor (see *City of New York v Love Shack*, 286 AD2d 240, 242 [2001], citing *W.T. Grant Co. v Srogi*, 52 NY2d 496 [1981]). Although, as the motion court correctly observed, irreparable injury is presumed from the continuing existence of an unremedied public nuisance (see *Love Shack*, 286 AD2d at 242 ["the irreparable injury is based upon the harm to the general public if the nuisance is not immediately abated"]; see also *Bilynn Realty*, 118 AD2d at 512-513), here the City failed to demonstrate a likelihood that it will ultimately succeed in proving that defendants' rental of some units within each of the buildings for periods of less than 30 days constitutes a violation either of the ZR or of the certificate of occupancy and, as such, a public nuisance.[4] This is because, even if it is assumed that an occupancy of less than 30 days is "transient" for purposes of the Multiple Dwelling Law and the ZR, the City failed to demonstrate that *most* of the units in any of the buildings are rented for such short-term occupancy. As explained below, the rental of a minority of a building's units for nonpermanent occupancy would violate neither the ZR nor the certificate of occupancy.

There is no requirement under either the ZR or the certificates of occupancy that the subject buildings be used exclusively for permanent occupancy. To reiterate, the ZR permits "apartment hotels" (such as the buildings in question) in general residential districts, and the ZR defines an "apartment hotel" as a building whose units "are used *primarily* for permanent oc-

---

**3.** Defendants' briefs do not address the portions of the motion court's order that preliminarily enjoined them from altering the buildings "unless and until" the City has issued them a certificate of no harassment and a permit for such work (*id.* at 396); accordingly, we do not disturb those portions of the order.

**4.** The City failed to establish the requisite likelihood of ultimate success on the merits whether the standard of proof is a preponderance of the evidence or clear and convincing evidence.

cupancy" (ZR § 12-10 [emphasis added]).[5] The use of the word "primarily" in the ZR's definition of "apartment hotel" indicates that a *secondary* use of a building, other than "permanent occupancy," is consistent with the status of an "apartment hotel."[6] As to the certificates of occupancy, which designate the buildings as class A multiple dwellings, Multiple Dwelling Law § 4 (8) (a) requires that a class A multiple dwelling be "occupied, *as a rule,* for permanent residence purposes" (emphasis added). Here again, the statute's use of the phrase "as a rule" indicates that a secondary use of the building, different from the specified primary use, is permitted.[7] Thus, when the relevant provisions of the Multiple Dwelling Law and the ZR are interpreted in accordance with "the obvious and fundamental rule of construction that words of common usage are to be given their ordinary meaning" (*Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.*, 51 NY2d 506, 511 [1980]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 232), it follows that no violation either of the ZR or of the certificate of occupancy would result from the use of a minority of the units in one of the buildings for nonpermanent or transient occupancy.[8]

---

   **5.** Conversely, as previously noted, the ZR defines a "transient hotel" as a building whose units "are used *primarily* for transient occupancy" (ZR § 12-10 [emphasis added]).

   **6.** *See* American Heritage Dictionary 1393 (4th ed 2000) (defining "primarily" in pertinent part to mean "[c]hiefly; mainly"); New Oxford American Dictionary 1345 (2d ed 2005) (defining "primarily" to mean "for the most part; mainly"); Random House Webster's Unabridged Dictionary 1537 (2d ed 2001) (defining "primarily" in pertinent part to mean "essentially; mostly; chiefly; principally"); Webster's Third New International Dictionary 1800 (2002) (defining "primarily" in pertinent part to mean "first of all: FUNDAMENTALLY, PRINCIPALLY").

   **7.** *See* American Heritage Dictionary 1522 (defining "as a rule" to mean "[i]n general; for the most part"); New Oxford American Dictionary 1482 (defining "as a rule" to mean "usually, but not always"); Random House Webster's Unabridged Dictionary 1680 (defining "as a rule" to mean "generally; usually"); Webster's Third New International Dictionary 1986 (defining "as a rule" to mean "as a general thing: ORDINARILY, USUALLY").

   **8.** That it is permissible under the Multiple Dwelling Law to rent some units of a class A SRO for short-term occupancy is also evidenced by Multiple Dwelling Law § 248 (16), which makes it "unlawful to rent any room in any such [SRO] dwelling for a period of less than a week," thereby implying that rentals of a week or more are lawful. Further evidence that it is permissible to rent some units of a class A SRO for short-term occupancy is furnished by Multiple Dwelling Law § 248 (17), which provides that "[i]n each such [SRO] dwelling a register shall be kept, which shall show the name, signature, resi-

While the City's evidence demonstrates—indeed, defendants readily admit—that a significant number of units in each building are (and have been for many decades) rented to tourists for periods of less than 30 days, the City made no showing that *most* of the units in any of the buildings are rented for such short-term occupancy. In fact, the City made no effort at all to quantify the proportion of each building's units that defendants rent for short-term occupancy.[9] As the party moving for a preliminary injunction, the City, not defendants, had the burden of showing that the buildings were not being "used primarily for permanent occupancy" (ZR § 12-10) or were not "occupied, as a rule, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a]) for the purpose of demonstrating a likelihood that a public nuisance would ultimately be proved. The City simply failed to carry this burden.

The motion court understood that the qualifying language of Multiple Dwelling Law § 4 (8) (a) ("as a rule") and ZR § 12-10 ("primarily") indicates that there is no absolute prohibition on transient occupancy in class A apartment hotels. We see no support, however, for the motion court's view that this qualifying language *permits only* "minimal" transient use of the subject buildings but not the use of "a significant portion of each of the buildings . . . for transient occupancy" (18 Misc 3d at 393). Under the plain meaning of the Multiple Dwelling Law and the ZR, the use of a significant portion of a class A apartment hotel for transient occupancy (however defined) is permissible so long as it remains true that the building is "occupied, as a rule, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a]) and that the building is "used primarily for permanent occupancy" (ZR § 12-10). The City is not entitled to the challenged preliminary injunction because it failed to demonstrate a likelihood that it ultimately will succeed in proving that the *foregoing* statements are *not* true of the three buildings at issue.

In reversing the grant of the preliminary injunction, we are also influenced by the vagueness and ambiguity of the relevant language of the Multiple Dwelling Law and the ZR, language

dence, date of arrival and date of departure of each occupant and the room occupied by him."

   **9.** Although such evidence was not before the motion court, we note that defendants, in support of their motion for a stay of the order appealed from, have submitted an affidavit indicating that, on average, no more than 30% of the units in the buildings are rented out for short-term occupancy.

that the City's arguments do little to clarify. In particular, as previously noted, the words "transient" and "permanent" are not defined in either the Multiple Dwelling Law or the ZR. Thus, even if all "transient" occupancy of the subject buildings were unlawful (as the City claims), it would not be clear where an injunction should draw the line between permitted and proscribed occupancies.[10] Although the City asserts that any occupancy of less than 30 days should be deemed "transient" and enjoined as such, it identifies nothing in the Multiple Dwelling Law or the ZR that supports this position. Instead, the City relies on the following assertion in the affidavit of James P. Colgate, an executive architect employed by plaintiff Department of Buildings (DOB): "DOB has, for almost forty years, consistently interpreted transient or the Class B occupancy requirements of the [Multiple Dwelling Law] to allow for occupancies of less than 30 days' duration, and permanent or Class A occupancy requirements to allow for occupancies of 30 days or longer" (footnotes omitted).The only support Mr. Colgate offered for this statement were two sections of the City's Building Code (adopted in 1968) that define, respectively, residential occupancy group J-1 as buildings "primarily occupied . . . [by] individuals on a day-to-day or week-to-week basis" (Administrative Code § 27-264) and residential occupancy group J-2 as buildings "with three or more dwelling units that are primarily occupied . . . [by] individuals on a month-to-month or longer-term basis" (Administrative Code § 27-265). The City, however, does not identify any indication that the above-cited Building Code sections either implement or interpret the Multiple Dwelling Law or the ZR. Thus, contrary to the motion court's view (18 Misc 3d at 391 n 5), the cited Building Code sections (which, as legislative enactments, were not promulgated by DOB) are of no assistance in interpreting the words "transient" and "permanent" as used in the Multiple Dwelling Law and ZR, and the City does not identify any other legal authority (whether legislative, administrative or judicial) that might provide such assistance.

Additional uncertainty is created by the phrase "as a rule" in the Multiple Dwelling Law's definition of a class A multiple

---

**10.** While Multiple Dwelling Law § 248 (16) makes it unlawful to rent an SRO unit "for a period of less than a week," the City does not ask, even in the alternative, that defendants be enjoined from renting units in the subject buildings for periods of less than one week. Since this remedy is not requested, we do not address whether the City would be entitled to it, either provisionally or as ultimate relief.

dwelling (Multiple Dwelling Law § 4 [8] [a]) and by the word "primarily" in the ZR's definition of an apartment hotel (ZR § 12-10). The City points to nothing that would assist us in determining at what point the proportion of the units of a class A multiple dwelling rented to permanent residents becomes large enough for the building to be deemed to be "occupied, *as a rule*, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a] [emphasis added]). Nor does the City direct our attention to any authority that would provide guidance in determining the minimum proportion of an apartment hotel's units that must be rented to permanent occupants for the building to be deemed to be used "primarily" for that purpose.

In view of the as-yet unresolved vagueness and ambiguity of the language of the Multiple Dwelling Law and the ZR that the City seeks to enforce, it cannot be said that the City has demonstrated a clear right to the drastic remedy of a preliminary injunction (*see e.g. Peterson v Corbin*, 275 AD2d 35, 37 [2000], *appeal dismissed* 95 NY2d 919 [2000] [preliminary injunction is a drastic remedy that should not be granted unless the movant establishes a clear right to such relief]; *see also City of New York v Les Hommes*, 94 NY2d 267, 273 [1999] [a zoning restriction should be "construed in favor of the property owner and against the municipality which adopted and seeks to enforce it"]; *Matter of Toys "R" Us v Silva*, 89 NY2d 411, 421 [1996] ["zoning restrictions, being in derogation of common-law property rights, should be strictly construed and any ambiguity resolved in favor of the property owner," citing *Matter of Allen v Adami*, 39 NY2d 275, 277 (1976)]). On this ground, as well, the granting of the City's preliminary injunction motion was, at a minimum, premature.

Defendants also argue that, even if the rental of some units in the subject buildings for transient occupancy is contrary to the current ZR, this kind of use was permitted, before the 1961 adoption of the current ZR, under the previously effective Zoning Resolution of 1916, as amended (the 1916 ZR), and therefore remains a lawful "nonconforming use" by operation of ZR § 52-11, the current ZR's "grandfathering" provision.[11] The City concedes that all hotels (including what the current ZR terms

---

11. In substance, ZR § 52-11 permits the continuation of a "nonconforming use" (defined in ZR § 12-10), notwithstanding the inconsistency of that use with the current ZR, if the use lawfully existed before the adoption of the current ZR. The benefit of ZR § 52-11 is lost if the use in question has been discontinued for two years or more (ZR § 52-61).

"transient hotels") were permitted in residential districts under the 1916 ZR. The City argues, however, that transient occupancy of the subject buildings is not grandfathered under the current ZR because, even before the current ZR was adopted, the certificates of occupancy designated the buildings as class A multiple dwellings, which (in the City's view) rendered transient occupancy unlawful.[12] The parties' dispute over the applicability of the grandfathering provision is rendered academic by our finding that, without regard to the pre-1961 use of the buildings, the City has not demonstrated a likelihood that it will succeed in proving a violation of the current ZR.[13] Still, we note that the City's argument against the application of the grandfathering provision (which the motion court accepted [18 Misc 3d at 391-392]) is predicated on the theory that a secondary use of the buildings for transient occupancy is inconsistent with the buildings' status as class A multiple dwellings. That theory, as we have already explained, is erroneous.

Finally, we affirm the order appealed from insofar as it denied defendants' pre-answer cross motion, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the City's first, second and fourth causes of action. Like the preliminary injunction motion, these causes of action are predicated on the contention that defendants' rental of units in the buildings for transient occupancy violates the ZR and the certificates of occupancy. While the City failed to establish an entitlement to a preliminary injunction against such use of the buildings, it cannot be said, as a matter of law, that there is no state of facts the City could prove that would establish a right to ultimate relief based on the challenged causes of action. In other words, these claims, as pleaded, state causes of action based on the alleged failure to use the buildings "primarily" (ZR § 12-10) or "as a rule" (Multiple Dwelling Law § 4 [8] [a]) for permanent occupancy. Further, the documentary evidence in the record does not establish, as a matter of law, that the City will be unable to prevail on the

12. In this regard, we note that the statutory language defining a class A multiple dwelling as one "occupied, as a rule, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a]) was originally enacted by Laws of 1946 (ch 950) about 15 years before the adoption of the current ZR in 1961.

13. For the same reason, we need not determine the effect, if any, of the "I-Cards" recording the City's pre-1961 inspections of the buildings. These I-Cards, insofar as they describe certain apartments in the buildings as "Class B" units, reflect that the City was aware that such units were being used for transient occupancy, consistent with the statutory definition of a class B multiple dwelling (see Multiple Dwelling Law § 4 [9], enacted by L 1946, ch 950).

first, second and fourth causes of action. Accordingly, while we recognize that the City may face a daunting burden, the determination of whether it is entitled to any relief on those claims must await further proceedings.

Accordingly, the order of the Supreme Court, New York County (Michael D. Stallman, J.), entered November 1, 2007, which, insofar as appealed from, as limited by the briefs, granted plaintiffs' motion for a preliminary injunction to the extent of enjoining defendants, pending final determination of this action, (1) from making any new reservations for transient occupancy ("transient" being defined as less than 30 days) of units in the three buildings located in Manhattan at, respectively, 315 West 94th Street (the Montroyal), 316 West 95th Street (the Pennington) and 330 West 95th Street (the Continental) and (2), as of January 8, 2008, from using or occupying or permitting the use or occupancy of any of the units of such buildings for transient use and/or as transient hotels and hostels, other than units so occupied on that date, and denied defendants' cross motion to dismiss the first, second and fourth causes of action in the verified complaint, should be modified, on the law and the facts, to deny plaintiffs' motion to the extent it sought the above-described injunctive relief, and to vacate such relief, and otherwise affirmed, without costs.

ANDRIAS, J.P., BUCKLEY, CATTERSON and ACOSTA, JJ., concur.

Order, Supreme Court, New York County, entered November 1, 2007, modified, on the law and the facts, to deny plaintiffs' motion for a preliminary injunction to the extent it enjoined defendants from (1) making any new reservations for transient occupancy of units in the three buildings located in Manhattan and (2) as of January 8, 2008, from using or occupying or permitting the use or occupancy of any of the units of such buildings for transient use and/or as transient hotels and hostels, other than units so occupied on that date, and to vacate such relief, and otherwise affirmed, without costs.