OPINION OF THE COURT
Joan A. Madden, J.
Plaintiff Ponito Residence LLC (Ponito) commenced this proceeding seeking a preliminary injunction against defendant 12th Street Apartment Corp. (12th Street Corp.) requiring the removal of the portion of a sidewalk bridge erected by 12th Street Corp., which is situated upon Ponito’s real property. Ponito alternatively requests to have this action converted to a license proceeding under RPAPL 881 and to have the court (i) establish a limitation on the duration that the sidewalk bridge may remain on Ponito’s property, (ii) set a monthly license fee, and (iii) direct 12th Street Corp. to indemnify Ponito for any damage caused by the sidewalk bridge. 12th Street Corp. opposes the motion insofar as Ponito seeks a preliminary injunction or the imposition of a monthly license fee.
Background
Ponito is the owner of real property located at 19 West 12th Street, New York, New York, which includes a townhouse building. 12th Street Corp. is the owner of an adjoining cooperative apartment building (the co-op) located at 13 West 12th Street.
It appears that during 2008, Ponito applied for a permit to change the townhouse from a two-family home into a single-family home and to perform certain other construction work on Ponito’s property.
*606 12th Street Corp. asserts that, during the year 2010, it determined that the glazing compound adhering the co-op’s windows and frames was brittle and deteriorating, and that loose pieces of the compound were disconnecting from the windows and creating a danger of falling. 12th Street Corp. consulted Peter F. Farinella Architect, EC. (Farinella) which determined that all the co-op’s windows should be replaced. Prior to performing construction work in connection with this contemplated project, 12th Street Corp. applied for a work permit to install a sidewalk bridge.
The New York City Department of Buildings (the DOB) issued a work permit for the installation of a 127-linear-foot sidewalk bridge on February 16, 2011, with an expiration date of February 16, 2012. Elisabeth de Kergorlay (Kergorlay), a member of Ponito, states in her affidavit that 12th Street Corp. installed the sidewalk bridge “[s]oon after the Work Permit was issued.” (Kergorlay aff 1i 6.) Kergorlay further states that the sidewalk bridge encroaches upon Ponito’s property and “obstructs a substantial portion of the frontage of [Ponito’s] [Property by approximately 20 feet.” (Kergorlay aff If 7.) Ponito asserts that 12th Street Corp. did not request permission from it to build a portion of the sidewalk bridge on Ponito’s property, and Ponito never granted such permission.
Kergorlay states that, as soon as the sidewalk bridge was erected on her property, her contractors and advisors contacted 12th Street Corp. and Orsid Realty, Inc. (Orsid), the managing agent of the co-op, to ascertain the scope and duration of the work necessitating the sidewalk bridge. However, Ponito asserts that definitive responses to its inquiries were not provided to it before it commenced this action.
While it appears that the sidewalk bridge was erected so that 12th Street Corp. could replace the windows in the co-op, many of the co-op’s shareholders objected to this plan and sought opinions from other architects to determine whether replacement of the windows was required. Dennis Nagel, an account executive of Orsid, states in his affidavit that as a result of the shareholder objections, “two months after the installation of the [Sidewalk Bridge], the [Co-Op] replaced its prior architect with Hoffman Architects, Inc. (‘Hoffman’).” (Nagel aff If 5.)
In May 2011, Kergorlay’s advisor, Scott Darling, contacted Nagel to inform him that Ponito needed access to a portion of the townhouse to make certain repairs to its parapet, which it was prevented from making as a result of the sidewalk bridge. *607 Kergorlay states that “[n]o substantive response . . . [from 12th Street Corp. was] forthcoming.” (Kergorlay aff 1i 11.)
On October 11, 2011, Ponito commenced this action against 12th Street Corp. asserting claims of trespass and unlawful conversion, and seeking an injunction requiring the immediate removal of the sidewalk bridge and damages. The next day, on October 12, 2011, Ponito made this motion, by order to show cause, as to why an order should not issue pending trial of this action, which would require the immediate removal of the portion of the sidewalk bridge located on Ponito’s property pursuant to RPAPL 871, which permits an owner of land to maintain an action for injunctive relief to remove a structure encroaching on its land.
Ponito maintains that a preliminary injunction requiring the immediate removal of the sidewalk bridge is appropriate as Ponito needs to make immediate repairs to its parapet, and the sidewalk bridge is obstructing Ponito’s access to the parapet such that it cannot make the appropriate repairs. Ponito maintains that these repairs must be undertaken, so that further damage is abated or prevented. Ponito further argues that removal of the sidewalk bridge is appropriate as 12th Street Corp. did not obtain a license to construct the sidewalk bridge on Ponito’s property and has not paid Ponito for the use of its property. Additionally, Ponito maintains that the sidewalk bridge does not conform to the requirements of section BC 3307.6.2 of the NY City Building Code (Administrative Code of City of NY tit 28, ch 7), which requires that a sidewalk bridge which projects onto an adjoining property “shall be constructed so as not to unreasonably obstruct, either visually or physically . . . adjacent properties.” Ponito also argues that a stop work order exists on 12th Street Corp.’s property, and that 12th Street Corp. has the obligation to immediately remove the sidewalk bridge under section BC 3307.10 of the Building Code, which requires the immediate removal of a sidewalk bridge “upon the completion of the construction or demolition activity.” Ponito maintains that 12th Street Corp.’s work must be deemed complete, since the stop work order prevents 12th Street Corp. from performing any further work.
Shortly after Ponito commenced this action, 12th Street Corp. offered to extend the sidewalk bridge to allow both parties to perform their repairs at the same time with costs to be shared pro rata. 12th Street Corp. contends that while Ponito initially participated in discussion of this proposal, it ceased all communications regarding it in January 2012.
*608 In opposition, 12th Street Corp. argues that Ponito has not established a prima facie case for a preliminary injunction as it has failed to show imminent and irreparable harm absent the grant of the preliminary injunction, likelihood of success on the merits, or that the balance of hardships tips in Ponito’s favor.
12th Street Corp. maintains that Ponito’s argument that it will sustain irreparable harm since the sidewalk bridge is preventing it from, making necessary repairs must be rejected as it has not provided sufficient explanation of the harm Ponito will suffer if it cannot make repairs to the townhouse. 12th Street Corp. also asserts that Ponito’s argument that it will suffer imminent and irreparable injury if an injunction is not granted is undercut by the delay between the time it first informed 12th Street Corp. of its desire to make repairs to the parapet and the time it filed this action. 12th Street Corp. further argues that Ponito’s failure to continue to pursue a cooperative solution that would enable both parties to make their desired repairs in a timely fashion shows that immediate action is not required with respect to the townhouse.
12th Street Corp. further argues that the court should allow the sidewalk bridge to remain in place, as its removal would pose a threat to public safety and potentially cause 12th Street Corp. to be in violation of the Building Code and other applicable rules and regulations. Craig A. Hargrove (Hargrove), the senior vice-president and director of architecture at Hoffman, states in his affidavit that if 12th Street Corp. were to remove the sidewalk bridge, it would likely be in violation of
“[Building Code] Section 3307.6.1, Article 302 of the Administrative Code and Chapter 100, Subchapter C of the Rules of the City of New York, which [require that a sidewalk bridge] be maintained until all exterior work is completed . . . during all times that potentially unsafe conditions to persons in proximity to the building exist.” (Hargrove aff If 8.)
Additionally, 12th Street Corp. presents evidence that the stop work order to which Ponito referred was resolved, and 12th Street Corp. asserts that it was unrelated to the construction project at issue here.
In reply, Ponito argues that 12th Street Corp. has conceded that the sidewalk bridge was erected on Ponito’s property without Ponito’s permission. Ponito asserts that it is, therefore, a trespass and that the court should issue a preliminaiy injunction. Alternatively, Ponito requests that the court convert this *609 action into a license proceeding under RPAPL 881, even though 12th Street Corp. did not request that the court do so. Ponito asks that, if this action is converted to a license proceeding under RPAPL 881, the court (i) limit the duration that the sidewalk bridge be allowed to remain on Ponito’s property, (ii) establish a monthly license fee, and (iii) direct 12th Street Corp. to indemnify and hold Ponito harmless for any damage caused by the sidewalk bridge.*
With this court’s permission, on or around June 14, 2012, Ponito submitted the supplemental affidavit of Brian Donohue (Donohue), an employee of the Continental Group, the construction manager for Ponito, in support of its order to show cause. In his affidavit, Donohue states that Ponito cannot obtain its desired certificate of occupancy for the townhouse as a result of the sidewalk bridge, since the sidewalk bridge is preventing Ponito from obtaining necessary approval from the Landmarks Commission, which will not inspect and approve the townhouse for the desired occupancy, unless Ponito submits photographs that expose all of the townhouse’s exterior elements. Additionally, Donohue appears to state that Ponito will need to perform certain repairs to the exterior of the townhouse to obtain the necessary approval from the Landmarks Commission, which cannot be made while the sidewalk bridge is in place. Donohue annexes certain permits issued by the Department of Buildings for Ponito to perform desired construction work. Donohue further states that it does not appear to him that 12th Street Corp. has commenced its construction work on the co-op and that it is his understanding that this work was not commenced because “[12th Street Corp.] has been paralyzed by indecision.” (Donohue aff If 5.) As such, Donohue opines that Ponito will be significantly prejudiced if the sidewalk bridge is allowed to remain in place and that the equities favor an injunction requiring the immediate removal of the sidewalk bridge.
In opposition, 12th Street Corp. submits the supplemental affidavits of Hargrove and Ayana M. Robertson (Robertson), an attorney associated with Cantor, Epstein & Mazzola LLR the attorney for 12th Street Corp.
Hargrove states that 12th Street Corp. performed some construction work relating to the windows, but that it had *610 encountered delays due to a variety of unforeseen circumstances, including the discovery that certain glazing clips had fallen out over time. Hargrove estimates that the construction work will not be completed before the onset of the 2012 winter months. (See Hargrove aff If 10.) Hargrove further states that Hoffman’s inspection of the co-op revealed the existence of four unsafe conditions in addition to the problems with the windows, including (i) spalling of precast concrete stones, (ii) cracks and corrosion of certain metal railings, (iii) inadequately secured wood fencing and trellises, and (iv) a loose and deteriorating metal awning. Hargrove states that, in conformance with Rules of City of New York Department of Buildings (1 RCNY) § 103-04, it filed a report with the DOB, and that the co-op is now categorized as “unsafe” and 12th Street Corp. is obligated to address these other unsafe conditions and cannot remove the sidewalk bridge.
Hargrove further asserts that Donohue’s supplemental affidavit does not provide enough information to determine whether the steps asserted to be necessary to receive approval from the Landmarks Commission actually need to be undertaken, and Hargrove notes that Donohue’s supplemental affidavit does not discuss parapet repairs. Hargrove also asserts that it may be possible to extend the sidewalk bridge to accommodate the needs of both parties. Additionally, Hargrove notes that the work permits annexed to Donohue’s affidavit have all expired and Hargrove questions what work Ponito could legally commence at present even if the sidewalk bridge were removed.
In addition, 12th Street Corp. asserts if this action is converted to a proceeding under RPAPL 881, a license fee is not mandated by applicable law as a result of the co-op’s continued use of the sidewalk bridge, citing 10 E. End Ave. Owners, Inc. v Two E. End Ave. Apt. Corp. (35 Misc 3d 1215[A], 2012 NY Slip Op 50712[U] [Sup Ct, NY County, Apr. 23, 2012]).
Discussion
A preliminary injunction is a drastic remedy, which should not be granted unless the movant demonstrates “a clear right” to such relief. (City of New York v 330 Cont. LLC, 60 AD3d 226, 234 [1st Dept 2009]; Peterson v Corbin, 275 AD2d 35 [2d Dept 2000], Iv dismissed 95 NY2d 919 [2000].) Entitlement to a preliminary injunction requires a showing of (1) likelihood of success on the merits, (2) irreparable injury absent the granting of preliminary injunctive relief, and (3) a balancing of the equities in the movant’s favor. (CPLR 6301; Nobu Next Door, LLC v Fine *611 Arts Hous., Inc., 4 NY3d 839 [2005]; Aetna Ins. Co. v Capasso, 75 NY2d 860 [1990].) If any one of these three requirements is not satisfied, the motion must be denied. (Faberge Intl. v Di Pino, 109 AD2d 235 [1st Dept 1985].) Moreover, “[p]roof establishing these [requirements] must be by affidavit and other competent proof, with evidentiary detail.” (Scotto v Mei, 219 AD2d 181, 182 [1st Dept 1996].)
Here, Ponito is not entitled to a preliminary injunction mandating the removal of the sidewalk bridge. As a preliminary matter, Ponito has not shown that it will suffer imminent and irreparable harm since, at the very least, there is conflicting evidence regarding the nature and extent of the injury to Ponito, and whether Ponito could take actions to mitigate the extent of this injury. Next, as there is evidence tending to show that removal of the sidewalk bridge at this stage could cause a threat to public safety it cannot be said that the equities balance in Ponito’s favor. Under these circumstances, Ponito has not shown a likelihood of success on its cause of action for a mandatory injunction and, in any event, even if the claim for trespass based on the encroachment of the sidewalk bridge on its property has merit, injunctive relief is not warranted here in the absence of a showing of irreparable harm and a balance of equities in Ponito’s favor. (See Marsh v Hogan, 81 AD3d 1241, 1242-1243 [3d Dept 2011] [to be entitled to an injunction directing the removal of an encroachment of a structure on plaintiffs property, plaintiff must “demonstrate not only the existence of the encroachment, but that the benefit to be gained by compelling its removal would outweigh the harm that would result to the defendants from granting such relief’ (internal quotation marks and citations omitted)].)
The next issue for consideration is whether conversion of this action into a proceeding under RPAPL 881 is appropriate. RPAPL 881 allows property owners who seek “to make improvements or repairs to real property” to enter upon the premises of adjoining property owners where permission to so enter has been denied and the property owners’ real property is “so situated that such improvements or repairs cannot be made by the [property] owner[s] . . . without entering the premises of [the] adjoining [property] owner[s].” RPAPL 881 further provides that “[s]uch license shall be granted . . . upon such terms as justice requires [and that] [t]he licensee shall be liable to the adjoining owner . . . for actual damages occurring as a result of the entry.”
*612 A court may convert an action for a preliminary injunction into a proceeding under RPAPL 881 where such conversion is appropriate. (See Mindel v Phoenix Owners Corp., 210 AD2d 167 [1st Dept 1994], Iv denied 85 NY2d 811 [1995] [finding that court’s conversion of action for a preliminary injunction into a proceeding under RPAPL 881 was proper].) “In determining the issue of whether to grant... a license pursuant to RPAPL 881, the court must apply a ‘standard of reasonableness.’ ” (Matter of Rosma Dev., LLC v South, 5 Misc 3d 1014[A], 2004 NY Slip Op 51369[U], *3 [Sup Ct, Kings County 2004], quoting Mindel v Phoenix Owners Corp. at 167.) The court must “consider the competing interests of the adjoining landowners, as well as the interests of the public at large . . . .” (Matter of CRP/Extell 99 W. Side L.P. v 808 W. End Ave. LLC, Sup Ct, NY County, Jan. 24, 2006, Lippmann, J., index No. 117094/05, slip op at 2; see also Deutsche Bank Trust v 120 Greenwich Dev. Assoc., 7 Misc 3d 1006[A], 2005 NY Slip Op 50467[U] [Sup Ct, NY County 2005].) “A court may also require that the licensee fulfill additional terms as a condition of the license, including posting a bond, [paying periodic license fees, and] obtaining insurance coverage . . . .” (Matter of CRP/Extell 99 W. Side L.P. v 808 W. End Ave. LLC at 2; see also Deutsche Bank Trust v 120 Greenwich Dev. Assoc. at *3.)
The court finds that the circumstances here warrant the conversion of this action into a proceeding under RPAPL 881, and such conversion is appropriate given the necessity of a sidewalk bridge to effect certain of the repairs that 12th Street Corp. seeks to undertake, and Ponito’s refusal of permission to allow the sidewalk bridge to remain in place. (Mindel v Phoenix Owners Corp. at 167.) Moreover, the court finds that, in consideration of the delays that have been occasioned in large by 12th Street Corp.’s indecision as to how to handle the window replacement project and the length of time that 12th Street Corp. estimates that the sidewalk bridge will need to remain in place, durational limits and a license fee ought to be imposed. (Matter of Rosma Dev., LLC v South, 2004 NY Slip Op 51369[U] at *3.) As for the duration of the license, the supplemental affidavit of Hargrove, a licensed architect for 12th Street Corp., states that the sidewalk bridge would not be able to be removed prior to the outset of the 2012 winter months. As such, the license will have a duration of five months from the date of entry of this decision and order, subject to extension as directed below.
*613 While 12th Street Corp. opposes the imposition of a license fee based on the denial of such a fee in 10 E. End Ave. Owners, Inc., the court finds that the holding in 10 E. End Ave. Owners, Inc. is not controlling here. In particular, while the court in 10 E. End Ave. Owners, Inc. found that based on the facts before it a license fee was not warranted, in this case, a license fee is proper, particularly as the sidewalk bridge was installed more than 18 months ago, and the need for a license in this matter arises from the delays attributable to 12th Street Corp., as the party encroaching on the adjacent property.
Next, in the event Ponito suffers damages resulting from the work on the sidewalk bridge, it will have a right to recover such damages. (Mindel v Phoenix Owners Corp. at 167.) However, at this juncture, it would be premature to determine the amount of damages, if any, that Ponito is entitled to as a result of the sidewalk bridge. Moreover, it appears from the record that 12th Street Corp. has named Ponito as an additional insured on its certificate of insurance for the work at issue, and as directed below, 12th Street Corp. shall provide Ponito with proof of such insurance and Ponito will have an opportunity to seek additional coverage or protection in the event it concludes that the amount of insurance is insufficient to cover its potential losses resulting from the sidewalk bridge.
Conclusion
Accordingly, it is ordered that this action is converted to a special proceeding under RPAPL 881; and it is further ordered that 12th Street Corp. is hereby granted a license pursuant to RPAPL 881 to enter that portion of Ponito’s property necessary for the purpose of maintaining the sidewalk bridge; and it is further ordered that the granting of such license is subject to the following terms and conditions:
1. 12th Street Corp. shall be entitled to such license for a period of five months, commencing upon the entry of this decision and order, subject to extension on notice to Ponito, and upon submission to the court of proof regarding the need for such extension.
2. 12th Street Corp. shall pay the sum of $1,500 per month to Ponito until the work under the license is completed.
3. 12th Street Corp. shall, within 15 days of the date of this decision and order, submit proof to Ponito, that it has named Ponito as an additional insured on its policy of insurance, and in the event Ponito deems the amount of coverage to be insuf *614 ficient to protect it from potential losses resulting from the sidewalk bridge, it can apply to the court for an increase in such amount.
4. 12th Street Corp. shall be liable to Ponito for any damages, which may occur as a result of granting the within license, and at the end of the license, Ponito may seek a hearing before a special referee pursuant to CPLR 4317 to determine the amount of actual damages incurred by Ponito, if any, as a result of 12th Street Corp.’s entry on its property.

 Ponito also asserts that the permit for the sidewalk bridge has an expiration date of February 16, 2012, and that 12th Street Corp. has not presented any evidence concerning its efforts to renew the permit. This argument is unavailing as the DOB’s website shows that the permit was renewed.