[15 NYS3d 318]

# In the Matter of B&M KINGSTONE, LLC, Respondent, v MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD., Appellant.

First Department, August 11, 2015

### APPEARANCES OF COUNSEL

*Satterlee Stephens Burke & Burke LLP*, New York City (*Alun W. Griffiths* and *Susie Kim* of counsel), for appellant.

*The Law Firm of Elias C. Schwartz, PLLC*, Great Neck (*Elias C. Schwartz, Michelle Englander* and *Sarah A. Chussler* of counsel), for respondent.

### OPINION OF THE COURT

ACOSTA, J.P.

Petitioner, B&M Kingstone, LLC (B&M), served an information subpoena on the New York branch of respondent, Mega International Commercial Bank, Co., Ltd. (Mega), in order to enforce a money judgment obtained against a group of judgment debtors more than 10 years ago. Although it complied with demands for information pertaining to its New York branch, Mega refused to produce similar information regarding accounts and records at its branches outside New York State. It argued, among other things, that New York courts lack personal jurisdiction over it with respect to that information. We hold that Mega's New York branch is subject to jurisdiction requiring it to comply with the appropriate information subpoenas, because it consented to the necessary regulatory oversight in return for permission to operate in New York. Moreover, Mega does not contend that compliance with the information subpoena would be onerous or unduly expensive or that the requested information is not available in New York.

Background

In 2003, a court in Florida entered judgment in excess of $39 million in favor of Super Vision International, Inc. (Super Vision) and against individual and corporate entities (the judgment debtors) in the matter of *Super Vision Intl., Inc. v Caruso* (2003 WL 25416752 [Fla Cir Ct, June 16, 2003, W. Thomas

Spencer, J., Case No. CI-99-9392]). Super Vision claimed that the judgment debtors had engaged in counterfeiting, civil theft, and misappropriation of its proprietary information. Judgment debtor Samson Wu subsequently executed a Consent to Disclosure of Bank Account Information (consent) authorizing the disclosure of any account information for all accounts belonging to him and upon which he was authorized to draw.*

On March 24, 2009, Super Vision assigned its rights against the judgment debtors to B&M. Approximately five years later, the Florida judgment was entered and recorded in Nassau County in the State of New York in favor of B&M.

Mega is an international banking corporation, organized under the laws of Taiwan, with a principal place of business in Taipei City. It has 128 branches worldwide, 107 of which are located in Taiwan. The remaining branches are located in 14 other countries. Mega operates one branch in New York.

Believing that Mega maintains bank accounts for the judgment debtors and is in possession of assets belonging to the judgment debtors, B&M served Mega with a subpoena duces tecum and an information subpoena, with restraining notice and questionnaire, on August 7, 2014. The questionnaire asked, among other things, whether Mega had a record of any account in which each judgment debtor may have an interest and whether the judgment debtor was indebted to Mega in any manner.

On August 11, 2014, a representative of Mega called B&M's counsel and said that Mega could not and would not access accounts maintained outside the State of New York. By letter dated August 14, 2014, Mega served its responses to the questionnaire, together with responsive documents. In response to the information subpoena, Mega stated that its New York branch was not in possession of any judgment debtor's assets. It also stated that its New York branch was not holding any account or other property for the judgment debtors and that the judgment debtors were not indebted to it.

---

* The consent, signed and notarized on January 7, 2004, contains the notarized signature of Samson Wu, and states that he directs any bank at which he may have an account of any kind to disclose and deliver copies of all documents that relate to those accounts to the law firm of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., "for the period of January 2002 to the present date." The consent states, "Such disclosures are authorized in connection with any request to enforce the Judgment" in the *Super Vision* case.

On August 19, 2014, B&M told Mega that the responses to the subpoenas were inadequate, in that they pertained only to one branch of Mega, and not Mega worldwide.

On August 27, 2014, B&M's counsel received Mega's response to the subpoena duces tecum, which addressed Mega's New York branch only. Mega stated that its New York branch was not in possession of assets belonging to any judgment debtor, and objected to the subpoena to the extent it sought records located in Mega branches outside New York.

On September 10, 2014, B&M commenced this proceeding by filing a petition signed by Brett Kingstone, the founder of Super Vision. Kingstone alleges that the judgment debtors have been deliberately evading enforcement of the judgment, including by filing chapter 11 bankruptcy petitions, destroying material evidence, relocating inventory from Florida to Shanghai, China, and continuing to make use of Super Vision's proprietary equipment in Shanghai. Judgment debtor Wu had been found in criminal contempt of court in Florida in 2004 for attempting to avoid an order through a sham transaction. Kingstone set forth information that had been learned by a private investigator allegedly showing that Mega was intimately involved with the judgment debtors, especially Wu, and was involved in efforts to conceal the judgment debtors' assets, including through transactions in Panama, where the manager of the Free Zone branch of Mega was an officer of companies owned by Wu.

The petition seeks an order compelling compliance with the subpoena duces tecum and the information subpoena and questionnaire, and restraining any accounts held by judgment debtors.

B&M also moved for an order restraining bank accounts pursuant to CPLR 5222 (b) and compliance with the subpoena duces tecum and the information subpoena restraining notice and questionnaire pursuant to CPLR 5224, and finding Mega in contempt for its failure to fully respond to the subpoenas pursuant to CPLR 5251.

B&M argued that Mega had failed to respond properly to the subpoenas when it limited its responses to its New York branch, and sought a preliminary injunction to prevent Mega from transferring or otherwise disposing of the assets of the judgment debtors. In the alternative, it requested an order compelling Mega's compliance or holding Mega in contempt. B&M argued that, pursuant to CPLR 5223 and 5224, Mega was required to fully comply with the subpoenas, regardless of

where in the world the assets of the judgment debtors were held.

Citing *Daimler AG v Bauman* (571 US —, —, 134 S Ct 746, 760 [2014]), Mega argued that B&M had no jurisdiction over Mega as a whole. It argued that pursuant to *Daimler*, a court could not exercise general jurisdiction over an entity unless the entity could fairly be regarded as at home in the forum jurisdiction. Thus, merely operating a branch office in the forum jurisdiction was insufficient to establish general jurisdiction. Mega argued that, in this case, it was incorporated and had its principal place of business in Taiwan, and its operations in New York were so narrow and limited that it could not fairly be regarded as at home in New York.

Mega also argued that the "separate entity" rule precluded enforcement of subpoenas and restraining notices as to Mega branches outside New York. The separate entity rule provides that postjudgment subpoenas served on branches of banks in New York are operative only as to branches within New York State (*see Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101 [1st Dept 2000]).

Finally, Mega argued that principles of international comity precluded compelling international compliance with the subpoenas. It contended that compliance with the subpoenas could require Mega to violate banking regulations in multiple jurisdictions, and cited Panama and Taiwan as two jurisdictions that could impose fines on it if it were to comply with the subpoenas.

In support, Mega submitted a declaration by Huei-Ying Chen, a vice-president and deputy general manager of its New York branch. Chen stated that New York branch personnel were primarily responsible for banking operations pertaining to the New York branch; that New York branch personnel did not have decision-making authority for Mega as a whole or any other branches, and that no senior Mega executives were located in New York.

Mega also submitted declarations by two foreign legal experts. Hsiao-Ling Fan, an attorney in Taiwan, stated that it was his professional opinion that compelling Mega to comply with the subpoenas would place Mega in violation of portions of Taiwanese banking laws, specifically, article 28.2 of Taiwan's Banking Act. He further asserted that disclosing personal information related to customer accounts would expose Mega to criminal liability in Taiwan. Fan argued that any subpoena

seeking information about assets held in Taiwan should be delivered and served in accordance with the Taiwanese Law in Supporting Foreign Courts on Consigned Cases.

Luis Guinard, an attorney licensed to practice law in the Republic of Panama, stated that it was his professional opinion that compelling Mega to comply with the subpoenas as to accounts and assets of judgment debtors located in Panama would place Mega in violation of article 111 of Executive Decree No. 52 of the Panamanian Banking Law. Guinard further stated that Wu's consent did not warrant disclosure of any accounts of assets that Wu may have had in Mega branches in Panama.

The IAS court found that it did not have jurisdiction over Mega, and the turnover aspect of the petition was therefore denied. However, since Mega had the ability to access information concerning accounts around the world, the court ordered it to comply with the information subpoena. The court also relied upon CPLR 5223, which permits a judgment creditor to demand information from any person. The court found that foreign laws were not cited with sufficient specificity to invoke the doctrine of international comity and furthermore that Wu had agreed in writing to the disclosure of any accounts that he may have owned or used.

Analysis

In *Daimler AG v Bauman* (571 US —, 134 S Ct 746 [2014]), the Supreme Court held that general, or all-purpose, jurisdiction allowed a court to hear any and all claims against a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State" (571 US at —, 134 S Ct at 751 [internal quotation marks omitted]).

Applying *Daimler* in *Gucci America, Inc. v Weixing Li* (768 F3d 122 [2d Cir 2014]), the Second Circuit concluded that the District Court did not have general jurisdiction over the Bank of China to enforce a prejudgment asset freeze injunction. The bank had branch offices in New York, but it was incorporated and headquartered elsewhere, and its contacts were not so continuous and systematic as to render it essentially at home in New York. The bank had only four branch offices in the United States, and only a small portion of its worldwide business was conducted in New York.

Thus, under *Daimler*, New York does not have general jurisdiction over Mega's worldwide operations. However, that does

not end the inquiry. Like Banco Bilbao Vizcaya Argentina (BBVA) in *Vera v Republic of Cuba* (91 F Supp 3d 561 [SD NY 2015]), Mega "consented to the necessary regulatory oversight in return for permission to operate in New York, and is therefore subject to jurisdiction requiring it to comply with the appropriate Information Subpoenas" (91 F Supp 3d at 571). As the *Vera* court explained in finding that BBVA was subject to jurisdiction:

> "The state of New York in general, and New York City in particular, is a leading world financial center. In order to benefit from the advantages of transacting business in this forum, a foreign bank must register with and obtain a license from the Superintendent of the Department of Financial Services ('DFS'), and file a written instrument 'appointing the superintendent and his or her successors its true and lawful attorney, upon whom all process in any action or proceeding against it on a cause of action arising out of a transaction with its New York agency or agencies or branch or branches'. N.Y. Bnk. Law § 200(a). BBVA is registered with the DFS as a foreign branch. The Second Circuit recognized that the privileges and benefits associated with a foreign bank operating a branch in New York give rise to commensurate, reciprocal obligations. Foreign corporations which do business in New York are bound by the laws of both the state of New York and the United States, and are bound by the same judicial constraints as domestic corporations. Under New York Banking Law, foreign banks operating local branches in New York can both sue and be sued. *See, e.g., Greenbaum v. Handlesbanken,* 26 F.Supp.2d 649 (S.D.N.Y.1998). This legal status also confers obligations to participate as third-parties in lawsuits which involve assets under their management" (91 F Supp 3d at 570, *but see Gliklad v Bank Hapoalim B.M.,* 2014 NY Slip Op 32117[U] [Sup Ct, NY County 2014] [Banking Law § 200 (a) only provides specific jurisdiction for a cause of action arising out of a transaction with its New York agency or agencies or branch or branches]).

The issue is whether the separate entity rule bars New York courts from compelling Mega's New York branch to produce information pertaining to Mega's foreign branches.

The separate entity rule is that "each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other [branches] or at the home office" (*Cronan v Schilling*, 100 NYS2d 474, 476 [Sup Ct, NY County 1950]; *see also Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101 [1st Dept 2000]; *Therm-X-Chem. & Oil Corp. v Extebank*, 84 AD2d 787 [2d Dept 1981]). The continuing validity of this arcane rule was recently upheld by the Court of Appeals in *Motorola Credit Corp. v Standard Chartered Bank* (24 NY3d 149 [2014]), solely with respect to restraining notices and turnover orders affecting assets located in foreign branch accounts (*id.* at 159 n 2 ["(t)he narrow question before us is whether the rule prevents the restraint of assets held in foreign branch accounts, and we limit our analysis to that inquiry"]). "In other words, a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches" (*id.* at 159). Thus, *Motorola's* expressly limited affirmation of the separate entity rule does not apply to the instant case, and the rule does not bar the court's exercise of jurisdiction over Mega to compel a full response to the information subpoena.

Moreover, public policy interests and innovations in technology support such an exercise of jurisdiction. As the *Vera* court noted, "[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts" (91 F Supp 3d at 569 [internal quotation marks omitted]), and "New York law entitles judgment creditors to discover all matters relevant to the satisfaction of [a] judgment" (91 F Supp 3d at 570 [internal quotation marks omitted]).

The court reasoned that

> "*Daimler* and *Gucci* should not be read so broadly as to eliminate the necessary regulatory oversight into foreign entities that operate within the boundaries of the United States. There is no reason to give advantage to a foreign bank with a branch in New York, over a domestic bank . . . When corporations receive the benefits of operating in this forum,

it is critical that regulators and courts continue to have the power to compel information concerning their activities" (91 F Supp 3d at 571).

As the *Vera* court concluded, "The information requested by the Information Subpoena can be found via electronic searches performed in BBVA's New York office, and [is] within this jurisdiction" (*id.*).

Mega does not claim that compliance with the information subpoena would be onerous or unduly expensive or that the requested information is not available in New York. Thus, the court's general personal jurisdiction over the bank's New York branch permits it to compel that branch to produce any requested information that can be found through electronic searches performed there (*compare Ayyash v Koleilat*, 115 AD3d 495, 495 [1st Dept 2014] [affirming denial of motion to compel where, among other things, it "would likely cause great annoyance and expense" to the New York branch of the financial institution]; *see also* CPLR 5223).

The court properly determined that Mega did not show that principles of international comity preclude enforcement of the subpoena (*see Morgenthau v Avion Resources Ltd.*, 11 NY3d 383, 389-390 [2008]). In particular, Mega's submissions were insufficient to show that the bank could face liability for violating Taiwanese or Panamanian law if it were required to comply with the subpoena. Nor did Mega show that the interest of any other state or country is greater than New York's interest in enforcing its judgments and regulating banks operating within its jurisdiction (*see Gucci America, Inc. v Weixing Li*, 768 F3d at 139 and n 20). In any event, at least with respect to Wu, any concerns about comity are overcome by the terms of the consent.

Accordingly, the order of the Supreme Court, New York County (Geoffrey D. Wright, J.), entered September 19, 2014, which, to the extent appealed from, granted petitioner's motion to direct respondent to fully respond to an information subpoena, should be affirmed, with costs.

Saxe, Richter, Gische and Kapnick, JJ., concur.

Order, Supreme Court, New York County (Geoffrey D. Wright, J.), entered September 19, 2014, affirmed, with costs.