OPINION OF THE COURT
Kathryn E. Freed, J.
The decision and order on the motions is as follows:
The Imperial Court Hotel is a 227-unit single-room occupancy (hereinafter SRO) multiple dwelling located at 307 West 79th Street, New York, New York, owned and operated by defendants. It was built in 1906 and, since it was granted its first certificate of occupancy in March 1943, it has been classified as a class A building within the meaning of the Multiple Dwelling Law. (NY St Cts Elec Filing [NYSCEF] Doc No. 31; see Multiple Dwelling Law § 4 [8], [16].) Plaintiffs Richard Amelius, Sinja Cho, Ilona Farkas, Olga Papkovich and Jesse Zhu (hereinafter collectively referred to as the tenant plaintiffs) *838 are all long-term residents of the building in units that are subject to rent stabilization. The tenant plaintiffs claim that defendants have utilized the building for short-term stays in violation of the Multiple Dwelling Law and in contravention of the warranty of habitability applicable to their tenancies.
Defendants concede that, prior to amendments to the Multiple Dwelling Law that took effect in 2010 and 2011, they rented out SRO units at the Imperial Court for periods of as few as seven days. (NYSCEF Doc No. 20.) This use was entirely legal pursuant to former Multiple Dwelling Law § 248 (16), “which permitted single room occupancy owners to rent their rooms for periods as short as seven days.” (Matter of Grand Imperial, LLC v New York City Bd. of Stds. & Appeals, 137 AD3d 579, 579 [1st Dept 2016], lv denied 28 NY3d 907 [2016].) Among the legal developments most relevant to this case is the decision in City of New York v 330 Cont. LLC (60 AD3d 226, 233-234 [1st Dept 2009]). There, the Appellate Division, First Department interpreted former Multiple Dwelling Law § 4 (8) (a) to provide that units in class A multiple dwellings could be rented out for periods of less than 30 days, provided that the majority of the units in the building were occupied for permanent residence purposes. (Id.) The Court reasoned that this holding comported with the way the statute defined a class A multiple dwelling, namely that it would be “occupied, as a rule, for permanent residence purposes.” (Former Multiple Dwelling Law § 4 [8] [a].) Following that decision, the legislature amended the Multiple Dwelling Law to provide, among other things, that “[a] class A multiple dwelling shall only be used for permanent residence purposes.” (Multiple Dwelling Law § 4 [8] [a]; see L 2010, ch 225, § 8, as amended by L 2010, ch 566, §3.)
Defendants have attempted to advance the legal position that this amendment did not apply to their ability to rent units for seven days—which use had been expressly permissible by statute, and not on the basis of the decision in City of New York v 330 Cont. LLC (60 AD3d at 233-234)—reasoning that the Multiple Dwelling Law savings clauses permitted them to do so. (See Multiple Dwelling Law § 366 [1].) Defendants advanced this position before the Department of Buildings, the Board of Standards and Appeals, this court (Hunter, Jr., J.), the Appellate Division, First Department and, finally, the Court of Appeals. Skipping to the end of those legal developments, the Appellate Division held that the amended 30-day minimum *839 occupancy provision applies to the Imperial Court, as a class A multiple dwelling, notwithstanding the savings clauses (see Matter of Grand Imperial, LLC v New York City Bd. of Stds. & Appeals, 137 AD3d 579, 579 [1st Dept 2016]) and, on November 17, 2016, the Court of Appeals denied defendants’ motion for leave to appeal from the order (28 NY3d 907 [2016]). Thus, it is now beyond any dispute that rentals of less than 30 days at the Imperial Court violate the Multiple Dwelling Law.
The seven-day stays at issue in this action have been almost exclusively reservations that were made following the decision of this court (Hunter, Jr., J.) (NYSCEF Doc No. 32), in which it was held that the savings clauses of the Multiple Dwelling Law permitted seven-day stays at the Imperial Court, but before the decision of the Appellate Division, First Department, which reversed the Supreme Court decision. Throughout the course of this litigation, defendants have maintained that the seven-day stays have been legal because the reservations were made while the decision of this court (Hunter, Jr., J.) was in effect.
The tenant plaintiffs moved under motion sequence No. 001 for a preliminary injunction, which motion was denied in an order entered November 30, 2016. (NYSCEF Doc No. 365.) They now seek reargument of that motion.
The City of New York, under motion sequence No. 002, previously moved to intervene as a plaintiff, asserting, among other things, a public nuisance cause of action. The City also moved for a preliminary injunction. The court granted both branches of the City’s motion, though there is still some disagreement as to the details of the City’s intervention. This court implied during the parties’ first appearance that it intended to permit the City to intervene. Whether and when intervention was granted is subject to defendants’ current motion to reargue.
In addition to the motions to reargue certain aspects of this court’s prior order, there are many additional matters that require resolution. The City has moved to dismiss certain affirmative defenses appearing in defendants’ answers both to the tenant plaintiffs’ complaint as well as to the City’s own complaint. The City has also moved against various nonparties for discovery related relief.
I. The motion and cross motions to reargue are both denied.
A motion for reargument should be granted where the mov-ant establishes that the court “overlooked or misapprehended *840 any issue of law or fact in making its original determination.” (Jones v City of New York, 146 AD3d 690, 690 [1st Dept 2017]; see CPLR 2221 [d] [2]; Pezhman v Chanel, Inc., 126 AD3d 497 [1st Dept 2015].)
A. The City’s Intervention
Defendants have failed to raise a basis to reargue whether the City was entitled to intervene. It is true that the determination seems to have been made before defendants were given an opportunity to raise objections to the intervention. Nevertheless, the City has an interest in this litigation that convinced this court to permit it to intervene, as a matter of discretion, because its claims share common questions of law and fact with the tenant plaintiffs’ claims.[1] Indeed, defendants do not raise any objections to the City intervening as a plaintiff in their papers supporting the motion. Instead, they assert that this court never addressed whether the City had the right to bring additional parties into the action. They argue that the failure to make a ruling permitting the City to join additional defendants has caused some uncertainty as to service. Defendants argue that they were never served with the City’s summons and complaint in intervention; rather, they were only served with the moving papers on the order to show cause, which included the proposed summons and complaint as exhibits. This, they contend, was not adequate service of the summons and complaint in intervention. They further argue that their attorneys have only appeared for the purpose of contesting service up until this point.
Defendants’ objections with respect to personal jurisdiction over the newly added defendants were beyond the scope of the City’s motion to intervene, and are thus beyond the scope of a motion to reargue. In any event, the City stated at least a facial basis on which to proceed against all the parties it named. If any individual defendant feels it was wrongly named *841 in the City’s complaint, as the City asserts, the appropriate remedy would be a motion to dismiss.[2]
B, The City’s Preliminary Injunction
Defendants have failed to raise a ground for reargument of the City’s preliminary injunction. They argue that, since defendants voluntarily ceased seven-day rentals, the preliminary injunction motion was rendered moot. This precise argument was advanced and rejected by this court on the initial motion, and defendants have not set forth a reason to revisit the ruling.
C. The Tenant Plaintiffs’ Motion for a Preliminary Injunction
The tenant plaintiffs’ cross motion to reargue their motion for a preliminary injunction is denied. Their application was denied because this court found that they failed to show a likelihood of success on the merits. If there is some theory available to the tenant plaintiffs against defendants, it was not advanced in either the complaint or their motion papers. The tenant plaintiffs failed to show that a preliminary injunction would alleviate the harms complained of, even assuming that those harms rose to the level of a breach of the warranty of habitability or a private nuisance. Finally, their argument with respect to this court’s analysis of balance of the equities reflects a misunderstanding of the ruling as well as the term “status quo.” This court was required to, and did, analyze what effect its order would have on the parties, as well as innocent third parties, as they were at the time of the order—in effect, whether it would freeze the current state of affairs in place or would change them in some way, as well as who would be most harmed in the presence or absence of the injunction. Had this court found that the tenant plaintiffs established a likelihood of success on the merits, this element would have run in their favor as well. There is no reason to revisit the rulings already made.
*842 II. Dismissal of Affirmative Defenses
A. The City lacks standing to move to dismiss affirmative defenses appearing in the answer to the tenant plaintiffs’ complaint.
Pursuant to CPLR 3211 (a), “[a] party may move for judgment dismissing one or more causes of action asserted against him” on various grounds. (Emphasis added.) Similarly, CPLR 3211 (b) permits “[a] party [to] move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit.” While CPLR 3211 (b) does not contain the same limiting language as CPLR 3211 (a) it is a similar statutory provision. Further, courts have regularly held that parties do not have standing to move for relief that properly belongs to another party, except where a statute explicitly allows any party to make such a motion. (See U.S. Underwriters Ins. Co. v Greenwald, 31 Misc 3d 1206[A], 2010 NY Slip Op 52394[U], *5 [Sup Ct, NY County 2010]; Pizzingrilli v Von Kessel, 100 Misc 2d 1062, 1064 [Sup Ct, Monroe County 1979]; cf. Matter of Resnick v Town of Canaan, 38 AD3d 949, 951 [3d Dept 2007]; Matter of Sheldon v Vermonty, 36 AD3d 619, 620 [2d Dept 2007]; Manning v Lundgren, 12 AD2d 773, 774 [2d Dept 1961]; compare Travelers Cas. & Sur. Co. v Honeywell Intl., Inc., 26 Misc 3d 1202[A], 2006 NY Slip Op 52709[U] [Sup Ct, NY County 2006], affd 48 AD3d 225 [1st Dept 2008].)
The City’s argument that, as an intervenor, it has obtained “all” the rights of a party begs the question of whether, as a party, it has the right to move to dismiss affirmative defenses to another plaintiffs complaint. (Siegel, NY Prac § 183 at 323 [5th ed 2011].) The City’s power under the City Charter to prosecute civil actions in court for the public interest, although broad indeed, does not include the blanket authority to move for any relief it deems to comport with that interest. (See generally NY City Charter § 394 [c]; City of New York v State of New York, 86 NY2d 286, 305 [1995].) This is especially so where, as here, the City attempts to assert a right in a civil dispute that properly belongs to individuals who are adequately represented by their own counsel. The City was permitted to intervene in order to assert claims on behalf of the general public and for penalties under a nuisance abatement theory, not because this court was under the impression that the tenant plaintiffs lacked the ability to adequately represent their own interests. Although the tenant plaintiffs submitted an affirmation supporting the City’s arguments, they did not cross- *843 move. Thus, the City’s motion under motion sequence No. 003 is denied.
Despite the fact that there is no active motion to dismiss the affirmative defenses appearing in the answer to the tenant plaintiffs’ complaint, this court recognizes that some of the affirmative defenses, as well as the arguments for their dismissal, are nearly identical to those appearing in the answer to the City’s complaint. For this reason, to the extent that this court concludes that dismissal is appropriate as to affirmative defenses appearing in the answers to the City’s complaint as well as the tenant plaintiffs’ complaint, the dismissal will be applied to both, as a matter of discretion in the interest of judicial economy. (See Silver v Whitney Partners LLC, 130 AD3d 512, 514 [1st Dept 2015], lv denied 26 NY3d 910 [2015]; Vasquez v Almanzar, 107 AD3d 538, 541 [1st Dept 2013].)
B. The first affirmative defense, appearing in the answers to both complaints, that the complaints, in whole or in part, fail to state a cause of action upon which relief can be granted, remains viable.
The City has failed to meet its “heavy burden of showing that the defense is without merit as a matter of law.” (Granite State Ins. Co. v Transatlantic Reins. Co., 132 AD3d 479, 481 [1st Dept 2015].) The City has relied entirely on this court’s previous determinations with respect to the temporary restraining order and preliminary injunction applications as the basis on which to dismiss this affirmative defense. A preliminary injunction award requires only a likelihood of success on the merits. It is not a full determination of the merits. Additionally, “the pleaded defense of failure to state a cause of action is harmless surplusage and a motion to strike it should be denied as unnecessary.” (Towne v Kingsley, 121 AD3d 1381, 1383 [3d Dept 2014]; see also Butler v Catinella, 58 AD3d 145, 150-151 [2d Dept 2008].) Thus, this court’s conclusions with respect to the temporary restraining order or preliminary injunction cannot form the basis for dismissal of affirmative defenses.
C. The second affirmative defense, appearing in the answers to both complaints, that the complaints, in whole or in part, are barred by the applicable statute of limitations remains viable, and bars recovery by the City for any statutory claims going back more than three years prior to the commencement of the action.
A three-year statute of limitations applies to the City’s statutory claims, including public nuisance. (See CPLR 214 *844 [2].) Under the continuing wrong doctrine, each day that a nuisance takes place is considered a separate wrong, and a plaintiff may recover damages for each instance of nuisance occurring up to three years prior to the commencement of an action, but may not recover for any instances of nuisance going back beyond that period. (See Pilatich v Town of New Baltimore, 100 AD3d 1248, 1249 [3d Dept 2012]; City of New York v College Point Sports Assn., Inc., 61 AD3d 33, 49 [2d Dept 2009]; Lucchesi v Perfetto, 72 AD3d 909, 912 [2d Dept 2010]; see generally Covington v Walker, 3 NY3d 287, 292 [2004].) Here, the City cannot recover on its public nuisance cause of action to the extent that the events it has complained of go back more than three years from when it commenced its complaint, or July 18, 2013. The defense is valid to the extent that it bars the City’s claims that are more than three years old.[3]
D. The third affirmative defense, appearing in the answers to both complaints, that the complaints, in whole or in part, are barred by the doctrine of laches, is stricken as against the City only.
The City’s argument with respect to laches is not supported by an analysis of the relevant time periods. Nonetheless, since laches is not available against government entities attempting to enforce regulations designed to protect the public, the affirmative defense is without merit as a matter of law as to the City. (See Matter of New York State Med. Transporters Assn. v Perales, 77 NY2d 126, 130 [1990]; A.C. Transp. v Board of Educ. of City of N.Y., 253 AD2d 330, 337 [1st Dept 1999], lvs denied 93 NY2d 808 [1999]; Matter of Kenton Assoc. v Division of Hous. & Community Renewal, 225 AD2d 349, 350 [1st Dept 1996].)
E. The fourth affirmative defense, appearing in the answers to both complaints, that plaintiffs and the City have suffered no irreparable harm and therefore are not entitled to injunctive relief, is stricken as against the City only.
Unlike the tenant plaintiffs, the City need not show that it or the public will be irreparably injured in order to obtain injunctive relief in this context. (See City of New York v 330 Cont. LLC, 60 AD3d 226, 230 [1st Dept 2009]; City of New York v Bilynn Realty Corp., 118 AD2d 511, 512-513 [1st Dept 1986].) *845 Even if the City had standing to move for dismissal of this affirmative defense with respect to the tenant plaintiffs’ complaint, there is no indication that this affirmative defense is without merit as a matter of law, particularly considering that the tenant plaintiffs failed to meet this element in their motion.
F. The fifth affirmative defense, appearing in the answers to both complaints, for permission, as a matter of equity, to honor any reservations that were legal when made, is stricken.
Defendants’ theory that they may honor reservations that were legal when made—that is to say, were made after Justice Hunter’s decision but before the decision was reversed by the Appellate Division—is illogical and ignores the general rule that “judicial construction of a statute ordinarily applies retroactively.” (DIRECTV, Inc. v Imburgia, 577 US -, 136 S Ct 463, 469 [2015], citing Rivers v Roadway Express, Inc., 511 US 298, 312-313 [1994]; see generally 73 Am Jur 2d, Statutes § 61.) The statute at issue in this action had an effective date of May 1, 2011. Thus, the First Department’s interpretation of the statute as it impacts defendants’ ability to rent units for seven days or less must relate back to that effective date, not the date that defendants were served with notice of entry of the Court’s decision. Defendants were on notice that the decision was being appealed and, by choosing to market their property for seven-day stays during that interim period, they bore the risk that the decision would be reversed. Equity does not demand that this court countenance such behavior. To the contrary, this court is bound to apply the statute according to the most recent ruling of the highest court to have interpreted it. Whether and to what extent the City may recover on the public nuisance claims must depend entirely on defendants’ use of the property after the effective date of the statute regardless of when the reservations were made. It is technically unnecessary to reach the remainder of the arguments addressed to this affirmative defense in light of this determination, but the parties make various arguments with respect to fire and building codes in their briefs.
The City argues that, since defendants have illegally converted the building into one for transient use, they have triggered the fire and building code sections that apply to buildings that are authorized to engage in transient use. In other words, when determining whether defendants have violated *846 the fire and building codes, the violation should be measured as against the fire and building code provisions intended for class B multiple dwellings (Group R-l in the Building Code), not class A multiple dwellings (Group R-2 in the Building Code), since defendants have engaged in occupancy that, for all intents and purposes, comports with the use normally associated with class B multiple dwellings. With this reasoning in mind, the City asserts that defendants have failed to maintain an adequate fire safety director, an automatic sprinkler, and a fire alarm, among other things.
Defendants argue in response that their use of the property, under a class A multiple dwelling rubric, has always conformed with the relevant fire and building codes as they existed at the time the use took place. They argue that the City’s contentions improperly utilize the 2014 Code as if it covered the entirety of the stays at issue, where, in reality, the 2008 Code was the one applicable to the majority of the stays at issue in this matter. In light of this court’s determination as to the statute of limitations issue, that is only somewhat accurate. In reality, the 2008 Fire Code applies to occupancies in the building until the 2014 Fire Code became effective in March 2014.
In any event, the parties’ disagreements with respect to the applicability of the fire and building codes need not be resolved at this time for the purpose of determining whether this affirmative defense should stand. The arguments go to the gravity of defendants’ alleged violations, not to the issue of whether a violation has occurred at all. In other words, this court could parse through defendants’ use of the building through time (which is still somewhat contested), find that it triggered a certain category of building as defined in the fire and building codes, then measure their conduct as against those categories. Even if it were to find that defendants complied with the pertinent category in the codes, however, it would not change the issue of whether the conduct comported with the certificate of occupancy. Defendants concede that seven-day stays no longer comport with their certificate of occupancy, and their only argument under this affirmative defense is that this court is empowered to overlook their violations as a matter of equity. Since the use constitutes a violation that cannot be overlooked as a matter of equity regardless of compliance with the fire and building codes, the argument is without merit.
*847 G. This court declines to consider the City’s arguments as to the ninth affirmative defense, appearing in the answer to the tenant plaintiffs’ complaint only, that the commencement of the action was done in bad faith, and is frivolous, malicious and intended to harass defendants, since the City lacks standing to move to strike it, and it therefore remains viable.
H. The tenth affirmative defense, appearing in the answer to the City’s complaint only, and asserting that this court lacks personal jurisdiction over defendants, is stricken.
Defendants, as well as the newly added defendants, acknowledged service of the City’s summons and complaint in a stipulation that was later so-ordered by this court. (NYSCEF Doc No. 139.) Thus, defendants have waived this defense. Even if they had not waived the defense by stipulation, defendants were bound to move to dismiss on the ground of lack of service within 60 days after asserting the defense in the answer. (See Clermont v Abdelrehim, 151 AD3d 495 [1st Dept 2017]; Luver Plumbing & Heating, Inc. v Mo’s Plumbing & Heating, 144 AD3d 587, 588 [1st Dept 2016].) Their remaining arguments are lacking in merit. This court has granted the City leave to intervene by permission, and defendants acknowledged service of the City’s summons and complaint.
I. The sixth affirmative defense, appearing in the answer to the City’s complaint only, for comparative negligence or assumption of the risk, is stricken.
Comparative negligence or assumption of the risk are not theories available in defense of a public nuisance claim. (See generally Graceland Corp. v Consolidated Laundries Corp., 7 AD2d 89, 93 [1st Dept 1958], affd without op 6 NY2d 900 [1959].) Contrary to defendants’ arguments, the City has not, and cannot, join in the tenant plaintiffs’ private nuisance claims, just as the tenant plaintiffs have not joined in the City’s public nuisance claims. (See generally Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 568 [1977].)
J. The eighth affirmative defense, appearing in the answer to the City’s complaint only, that any recovery be reduced in accordance with CPLR article 16, is stricken.
CPLR article 16 is a statutory modification of the doctrine of joint and several liability in personal injury cases, and concerns the apportionment of liability for noneconomic losses sustained by injured individuals as between the various defendants. (See CPLR 1601.) It has no application here.
*848 III. Discovery Relief
A. The City and TripAdvisor LLC have entered into a stipulation, rendering the motion under motion sequence No. 005 resolved.
B. The City’s motion to compel Yelp, Inc, to comply with its subpoena to produce records is denied.
Yelp, a nonparty, is a Delaware corporation with a principal place of business in San Francisco, California. It has registered to do business in New York. Yelp objects to the City’s request for an order compelling compliance with its subpoena on First Amendment grounds and on the ground that this court lacks personal jurisdiction over it.
1. Registration to do business, in and of itself, does not confer general personal jurisdiction.
It is axiomatic that, for a court to have any power over an individual or entity, it must have both subject matter jurisdiction over a live case or controversy as well as personal jurisdiction over the individuals or entities involved. Authority for personal jurisdiction in the courts of New York must first be found in a statute, and then must not violate any due process considerations. (See generally D&R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292 [2017].) Personal jurisdiction falls into two main categories: specific jurisdiction and general jurisdiction. Specific jurisdiction, sometimes referred to as long-arm jurisdiction, refers to jurisdiction over an individual or entity for the purpose of adjudicating a particular controversy that arises from the entity’s contacts with the forum state. (See e.g. Fischbarg v Doucet, 9 NY3d 375 [2007].) General jurisdiction is all-purpose jurisdiction to adjudicate disputes regardless of where they took place or whether they bear any relationship to the entity’s contacts with the forum state. (See generally Goodyear Dunlop Tires Operations, S. A. v Brown, 564 US 915, 925 [2011].)
Although the City sets forth some arguments to the contrary, it is essentially undisputed that there is no basis for specific jurisdiction over Yelp under these circumstances.[4] Therefore, in the absence of a basis to assert general jurisdiction over Yelp, *849 this court would be powerless to enforce the subpoena against it. For individuals, general personal jurisdiction historically derives from that individual’s presence in the forum state. (See generally Pennoyer v Neff, 95 US 714, 723-724 [1878].) For corporations, the notion of presence is more complex. The Supreme Court of the United States recently reined in general jurisdiction significantly by holding that a corporation is present in a forum state, and thereby rightfully subject to general jurisdiction, only where its “affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.” (Daimler AG v Bauman, 571 US -, 134 S Ct 746, 761 [2014] [internal quotation marks and citations omitted].) The ruling casts significant doubt on the notion that a corporation could ever be subject to general jurisdiction in a state that is neither its state of incorporation nor its principal place of business. Indeed, the City sets forth no argument in the papers that Yelp’s contacts with New York are so continuous and systematic that it is essentially at home here. This leaves only one possible basis for jurisdiction: Yelp’s registration to do business here.
New York courts and federal courts sitting in New York State have traditionally held that registration to do business under Business Corporation Law §§ 304 and 1304 constitutes consent to general jurisdiction. (See e.g. STX Panocean [UK] Co., Ltd. v Glory Wealth Shipping Pte Ltd., 560 F3d 127, 131 [2d Cir 2009]; Rockefeller Univ. v Ligand Pharms., 581 F Supp 2d 461, 465-467 [SD NY 2008]; Augsbury Corp. v Petrokey Corp., 97 AD2d 173, 176-177 [3d Dept 1983].) There is no binding authority post -Bauman that conclusively determines whether the rule survives that decision.
In Matter of B&M Kingstone, LLC v Mega Intl. Commercial Bank Co., Ltd. (131 AD3d 259 [1st Dept 2015]), the Appellate Division, First Department held that the courts of this state could exercise general jurisdiction over a bank despite having *850 only a branch in New York, since the bank had consented to the complex regulatory authority of this state to govern financial institutions. But that case is distinguishable from this one, since Yelp never consented to be subject to the type of regulatory framework governing financial institutions that applied there. (See also Vera v Republic of Cuba, 91 F Supp 3d 561, 571 [SD NY 2015].)
Brown v Lockheed Martin Corp. (814 F3d 619, 639-641 [2d Cir 2016]) is indicative of the view of the United States Court of Appeals for the Second Circuit on this issue, but is similarly not dispositive. There, the court interpreted Connecticut’s registration statute to not entail consent to general personal jurisdiction. The court reasoned that, in the absence of a clear statutory mandate or definitive interpretations from the Connecticut Supreme Court requiring that result, and given the due process concerns that would be raised, the Connecticut statute should not be read to imply that registration to do business there would give rise to general personal jurisdiction in Connecticut courts. The Second Circuit did not pass on the question of whether the statute would be unconstitutional if it were read to equate registration with consent to general jurisdiction, but there are strong indications of doubt as to the constitutionality of such a reading in the decision.
Thus, this court is left to turn to persuasive authorities. Many courts considering the issue have held that consent jurisdiction based on registration to do business survives Bau-man. One court reasoned that, “[i]n New York, foreign corporations have been on notice since 1916 that registration to conduct business in this state amounts to consent to general jurisdiction here, and they can always cancel their registration if their business interests lead them to do so.” (Aybar v Aybar, 2016 NY Slip Op 31138[U], *7 [Sup Ct, Queens County 2016], in reference to Bagdon v Philadelphia & Reading Coal & Iron Co., 217 NY 432 [1916]; see also Bailen v Air & Liquid Sys. Corp., 2014 NY Slip Op 32079[U] [Sup Ct, NY County 2014, Heitler, J.]; cf. Robins v Procure Treatment Ctrs., Inc., 2017 NY Slip Op 30803[U] [Sup Ct, NY County 2017, Silver, J.].) The argument, essentially and simply, is that it remains the case that
“foreign corporations have no one to blame but themselves if they do not actually do business in New York or fail to surrender their license when they stop doing business here. The continuing exis *851 tence of the privilege to do business in New York, regardless of whether it is exercised, rightfully yields jurisdictional consequences if the consent to service on the Secretary of State goes unrevoked.” (Rockefeller Univ. v Ligand Pharms., 581 F Supp 2d at 467 [internal quotation marks and citation omitted].)
Other courts have been unconvinced by the logic of consent jurisdiction based on registration to do business and have revisited the proposition. The arguments against general jurisdiction based on registration focus on two main factors: first, that registration statutes like New York’s do not explicitly notify foreign corporations that registration to do business will open the door to unlimited personal jurisdiction in the state and, second, that such an exercise of jurisdiction is coercive and incommensurate with the amount of power a state reasonably needs to have over foreign corporations doing business in order for the state to protect its citizens. Registration to do business here is a relatively minor ministerial act (one that is required by every state in the union). Registration also does not require the corporation to make any kind of statement that it is consenting to general jurisdiction. For these reasons, several courts have held that consent to general jurisdiction based on this minor act fails to comport with due process. (See e.g. Wilderness USA, Inc. v DeAngelo Brothers LLC, 265 F Supp 3d 301 [WD NY Aug. 23, 2017]; Famular v Whirlpool Corp., 2017 WL 2470844, 2017 US Dist LEXIS 8265 [SD NY, Jan. 19, 2017, No. 16 CV 944 (VB)]; Bonkowski v HP Hood LLC, 2016 WL 4536868, 2016 US Dist LEXIS 116492 [ED NY, Aug. 30, 2016, No. 15-CV-4956 (RRM) (PK)]; Chatwal Hotels & Resorts LLC v Dollywood Co., 90 F Supp 3d 97, 105 [SD NY 2015]; Mischel v Safe Haven Enters., LLC, 2017 NY Slip Op 30774[U] [Sup Ct, NY County 2017, Coin, J.]; cf. Brown v Lockheed Martin Corp., 814 F3d at 639-641 [analyzing Connecticut’s registration statute]; Genuine Parts Co. v Cepec, 137 A3d 123 [Del 2016] [overruling case holding that registration constituted consent to general personal jurisdiction]; see generally Tanya J. Mones-tier, Registration Statutes, General Jurisdiction, and the Fallacy of Consent, 36 Cardozo L Rev 1343 [2015].)
Perhaps the most persuasive authority on the subject is Genuine Parts Co. v Cepec (137 A3d 123), in which the Delaware Supreme Court held that its registration statute could no Ion- *852 ger be read to imply consent to general jurisdiction in light of Bauman.
Similar to Delaware’s statute, New York’s does not contain any explicit language in reference to consent to jurisdiction— specific or general. Although New York courts have held that the registration has the effect of constituting consent (since Judge Cardozo wrote for the Court of Appeals in 1916 in Bagdon v Philadelphia & Reading Coal & Iron Co. [217 NY 432 (1916)]), it is true that the statute itself does not notify registrants that it will carry such a consequence. Business Corporation Law § 1304 (a) requires a foreign corporation applying to do business here to provide its name, jurisdiction and date of incorporation, purpose for which it has been formed, county in this state where its office is to be located, a designation of the Secretary of State as its agent for the service of process, an address within or without the state where process can be forwarded, and, if so desired, a registered agent. Nothing in the statute requires the corporation to execute a form in which it explicitly consents to subject itself to unlimited jurisdiction in the courts of this state. Business Corporation Law § 1305, titled “Application for authority; effect,” merely provides that, “[u]pon filing by the [Department of [S]tate of the application for authority [,] the foreign corporation shall be authorized to do in this state any business set forth in the application.” Although judicial decisions have been historically consistent in holding that registration to do business here constitutes consent to jurisdiction, it is concerning that the statutes do not make it explicit and that the corporation need not execute a form specifically acknowledging that registration will have such an effect.
As for the issue of coercion, the registration statute carries “only [one] direct penalty for a disregard of [its] provisions . . . [—]a disability to sue.” (People v Tropical Fruit Corp., 223 App Div 864, 864 [3d Dept 1928]; see Business Corporation Law § 1312 [b].) It has been held that a corporation’s complaint may be dismissed if it has failed to register to do business here and has “engaged in a regular and continuous course of conduct in the State” that is “essential to [its] corporate business.” (Highfill, Inc. v Bruce & Iris, Inc., 50 AD3d 742, 743-744 [2d Dept 2008] [internal quotation marks and citation omitted].) Although this is a high standard, it is of significant concern that this state subjects foreign corporations to a penalty for failing to register, and thereby consenting to unlimited personal juris *853 diction, for maintaining a course of dealings with this state that is less than “so continuous and systematic as to render [it] essentially at home” here. (Daimler AG v Bauman, 571 US at -, 134 S Ct at 761 [internal quotation marks omitted].) A foreign corporation that has been wronged by a New York corporation could be barred from seeking recompense in the courts of this state without subjecting itself to unlimited personal jurisdiction here. This is very unlikely to be a result that due process will allow in light of the considerations respecting general jurisdiction articulated in Daimler AG v Bauman (571 US -, 134 S Ct 746).
For the dual reasons that the statutes do not adequately apprise foreign corporations that they will be subject to general jurisdiction in the courts of this state and that foreign corporations are required to register for conducting a lesser degree of business in this state than the Supreme Court of the United States has ruled should entail general jurisdiction, this court finds that Yelp is not subject to general jurisdiction merely because it has registered to do business here. This court lacks personal jurisdiction over Yelp and is powerless to enforce the City’s subpoena against it.
2. First Amendment
Because this court has found that it lacks personal jurisdiction over Yelp, it does not reach the issue of whether the subpoena is permissible in light of the First Amendment concerns raised by Yelp. If it were to reach the issue, however, it would take into consideration the affidavit of Connie Sardo submitted notwithstanding the City’s procedural objections. This court does not agree that there was anything wrong with the initial filing. Even assuming, for the sake of argument, that the affidavit was not properly notarized in the initial filing, considering the City’s letters and surreplies, evidently designed to bring unpersuasive matters to this court’s immediate attention on occasions too numerous to count, all of which were filed without seeking this court’s permission (and which permission would in almost every instance have been denied), there is no prejudice whatsoever in accepting the document despite that it appears in a surreply.
C. The City’s motion for an order directing the Department of Housing and Community Renewal to produce certain documents is denied to the extent it seeks information concerning the building earlier than July 2013.
A subpoena cannot be countenanced by this court to the extent that it seeks information that is “overbroad.” (Matter of *854 Scharf [Hynes], 70 AD2d 915 [2d Dept 1979].) Since the City has no use in the context of this litigation for documents concerning defendants that go back before July 2013, the City’s motion will be granted only to the extent that the Department of Housing and Community Renewal is ordered to produce records from that date going forward. Furthermore, the “including, but not limited to” language is too vague to constitute a valid subpoena. Thus, the motion is granted with the caveats that the subpoena be limited to records going back no earlier than July 2013 and the “including, but not limited to” language is removed.
D. The City’s motion for a confidentiality order concerning the subpoena for information from Hotwire Travel New York is granted.
This is a motion for a confidentiality order that is unopposed by Hotwire. Although the information sought from Hotwire is, indeed, more broad than necessary, defendants have failed to timely object to the substance of the subpoena that is the subject of the proposed confidentiality order. They have set forth no reason why the confidentiality order should not be issued.
E. The City’s motion for a confidentiality order concerning the subpoena for information from Expedia, Inc, is granted.
This is a motion for a confidentiality order that is unopposed by Expedia. Similar to the motion directed at information sought from Hotwire, this subpoena is also more broad than is necessary. Since the only issue before this court is whether a confidentiality order should be issued, however, and as defendants have not set forth any good reason against it, the motion is granted.
F. The City’s motion to compel American Express Travel Related Services Company, Inc. (AmEx) to comply with its subpoena is denied to the extent it seeks records from before June 2013.
The City seeks information from AmEx for charge disputes or charge-back requests from the period beginning January 1, 2011. The time period for which it seeks information exceeds that for which it can recover against defendants, and is over-broad to that extent. Thus, the motion to compel compliance with the subpoena is granted only to the extent it seeks information concerning disputes or charge-backs beginning in June 2013 to the present, and is otherwise denied.
*855 G. Defendants’ cross motion under motion sequence No. Oil is denied, without prejudice, and a preliminary conference will be scheduled to attempt to mediate remaining discovery disputes between the parties.
Although this action has been pending for over a year, neither party has demanded a preliminary conference. It is the general practice in this part not to allow discovery motions between the parties until an attempt to conference any issues has been undertaken. Although the hundreds of documents filed in this action leave this court somewhat doubtful that an attempt to mediate discovery with court staff will be fruitful, this court will nevertheless require the parties to attempt to resolve their discovery disputes.
Accordingly, it is hereby ordered that, under motion sequence No. 003, the City’s motion to strike affirmative defenses appearing in the answer to the tenant plaintiffs’ complaint is denied; and it is further ordered that the motion under motion sequence No. 005 by the City to compel nonparty TripAdvisor LLC to comply with a subpoena is resolved pursuant to a stipulation between the parties, which this court will so-order herewith; and it is further ordered that, under motion sequence No. 006, the City’s motion to compel nonparty Yelp, Inc. to comply with a subpoena is denied; and it is further ordered that, under motion sequence No. 007, the City’s motion for an order directing the Department of Housing and Community Renewal to produce certain records is granted, except that the “including, but not limited to” language in the proposed subpoena is deleted, and the records are limited to those dated no earlier than June 2013; and it is further ordered that, under motion sequence No. 009, the City’s motion to strike affirmative defenses appearing in the answer to the City’s complaint is granted to the extent that the third, fourth, fifth, sixth, eighth, and tenth affirmative defenses appearing therein are stricken, the fifth affirmative defense appearing in the answer to the tenant plaintiffs’ complaint is stricken, and the motion is otherwise denied; and it is further ordered that, under motion sequence No. Oil, the motion by defendants and the cross motion by the tenant plaintiffs for reargument are denied, and the City’s cross motion for discovery relief against defendants is denied, without prejudice; and it is further ordered that, under motion sequence No. 012, the City’s motion for a confidentiality order concerning disclosure obtained from nonparty Hotwire Travel New York is granted, and this court will sign the proposed confidentiality order herewith; and it is further ordered that, *856 under motion sequence No. 013, the City’s motion for a confidentiality order concerning disclosure obtained from nonparty Expedia is granted, and this court will sign the proposed confidentiality order herewith; and it is further ordered that, under motion sequence No. 014, the City’s motion to compel nonparty American Express Travel Related Services Company, Inc. to comply with a subpoena is granted, except that disclosure is limited to those records dated no earlier than June 2013.

. Contrary to the City’s initial assertions, and notwithstanding the footnote in this court’s prior decision that contains an inaccuracy in this regard, the City’s intervention in this action was not as of right pursuant to CPLR 1012, but by permission pursuant to CPLR 1013. The New York City Charter does not grant the City a blanket right to intervene in any civil dispute that it believes will impact the public in some way. (Compare CPLR 1012 [b] [2].) The City does not have a direct interest in the outcome of the action between the tenant plaintiffs and defendants. Rather, the City has its own claims that it desires to assert on behalf of the public at large as well as to collect penalties from defendants. Since those separate claims share common questions of law and fact with those of the tenant plaintiffs, intervention by permission was, and remains, appropriate.

. The caption as amended in this court’s last order has become unwieldy. Since the City has been permitted to intervene for all purposes, it is simply a plaintiff. There is no need to have a separate party designation and a separate caption. Similarly, the new defendants appearing in the City’s complaint should be referred to as “defendants.” This situation is no different than in a consolidated action where multiple complaints are permitted to stand as the complaints in a consolidated action.

. Some of the City’s causes of action may also be subject to a one-year statute of limitations (see e.g. Administrative Code of City of NY § 7-703 [d]), but it is not necessary for the purposes of ruling on this motion to make more precise rulings in this regard.

. The City’s citations to Matter of La Belle Creole Intl., S.A. v Attorney-General of State of N.Y. (10 NY2d 192 [1961]) and Matter of Standard Fruit & S. S. Co. v Waterfront Commn. of N.Y. Harbor (43 NY2d 11 [1977]) are misplaced for the proposition that a lesser standard of jurisdiction is required for subpoenas. Those cases involved subpoenas issued in the context of investigations into whether the foreign corporations were, themselves, *849 engaged in illegal conduct. Here, the City maintains that Yelp may have information about individuals who may have information relevant to this action. Yelp is not subject to any of the regulations that the City believes defendants have violated. Since Yelp is neither a party to this action nor under investigation for potential legal violations, the City has failed to establish that there is a basis to exercise specific jurisdiction to enforce this subpoena. (Compare 23/23 Communications Corp. v General Motors Corp., 172 Misc 2d 821 [Sup Ct, NY County 1997].) Thus, the only theory available to the City is that this court may exercise general jurisdiction over Yelp based on its registration to do business in New York.