## BR Fund IV Acq Inv, LLC v Brightwood Capital Fund III-Inst., LP

2024 NY Slip Op 32954(U)

August 20, 2024

Supreme Court, New York County

Docket Number: Index No. 651756/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. MARGARET A. CHAN**     PART        49M

*Justice*

-------------------------------------------------------------------------X

BR FUND IV ACQ INV, LLC, BR FUND V ACQ INV, LLC,

Plaintiffs,

- v -

BRIGHTWOOD CAPITAL FUND III-INSTITUTIONAL, LP,
BRIGHTWOOD CAPITAL FUND III, LP, BRIGHTWOOD
CAPITAL FUND III-U, LP, BRIGHTWOOD CAPITAL FUND
MANAGERS III, LLC, BRIGHTWOOD CAPITAL FUND III-
INSTITUTIONAL HOLDING CORP., BRIGHTWOOD
CAPITAL FUND III HOLDINGS, LP, AND BRIGHTWOOD
FUND III-C, LP,

Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 651756/2024 |
| MOTION DATE | 04/25/2024 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 108, 110

were read on this motion to/for       PREL INJUNCTION/TEMP REST ORDR    .

      This breach of contract action is between investment vehicles that are the above-captioned plaintiffs and the investment funds and their managers / holding companies that are the above-captioned defendants. The parties entered into an agreement whereby plaintiffs would purchase the interest of the investment funds' limited partners by September 14, 2023. This deal never closed because defendants allegedly breached the agreement and purposely delayed the closing. Thus, plaintiffs move, by order to show cause, for a preliminary injunction for specific performance compelling defendants to close the transaction, which defendants oppose. For the reasons below, plaintiffs' motion is denied.

## FACTS

      In 2014, non-party Brightwood Capital Advisors, LLC (BCA) sponsored Brightwood Capital Fund III, comprising of the defendant funds: Brightwood Capital Fund III-Institutional LP; Brightwood Capital Fund III, LP; and Brightwood Capital Fund III-U, LP (the Funds) that are managers and/or holding companies by defendant Brightwood Capital Fund Managers III, LLC, Brightwood Capital Fund III-Institutional Holding Corp., Brightwood Capital Fund III Holdings, LP, and Brightwood Fund III-C, LP (together with the Fund defendants and BCA, Brightwood or defendants) (NYSCEF # 2, complaint at 1, 17 ¶'s 72, 74;

651756/2024  BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-
INSTITUTIONAL, LP, ET AL
Motion No. 002

Page 1 of 7

NYSCEF # 26, Driessen Aff ¶ 5). As the Funds were reaching the end of their contractual lives in the summer of 2022, Brightwood reached out to the Limited Partners (LPs) of the Funds and proposed extending the Funds' terms (Complaint ¶'s 3–4). According to plaintiffs, some of the investors agreed to the extension; however, Brightwood ultimately decided to launch a Continuation Vehicle (CV) instead, thereby giving the LPs the option of cashing out or continuing to participate in the funds (*id.*). To fund the CV, however, Brightwood needed a secondary specialist that could provide liquidity options to any of the LPs seeking to exit the fund (*id.*).

Banner Ridge Partners, LP (BRP) was that secondary specialist that Brightwood tapped in the fall of 2022 (*id.* ¶ 5). BRP managed investment vehicles BR Fund IV Acq. Inv., LLC and BR Fund V Acq. Inv. LLC, the above-captioned plaintiffs (together with BRP, Banner Ridge or plaintiffs). After hearing the deal, Banner Ridge agreed to commit all of the capital necessary to cover any of the Funds' exiting LPs' interest, which, according to Brightwood, amounted to $253.54 million (*id.* ¶'s 5–6). On June 16, 2023, the parties entered into a Transaction Agreement and a Letter Agreement (*id.* ¶'s 9-10; NYSCEF # 3 – Transaction Agreement; NYSCEF # 4 – Letter Agreement) to effectuate this transaction.

Under the Transaction Agreement, the parties agreed that from the date of signing on June 16, 2023, to the "End Date" on September 14, 2023, the last day to close the transaction, a number of actions would take place (Complaint ¶ 9). First, the CV was to make a tender offer to the LPs, giving them the option of selling their interests (the LP interests) to the CV (*id.* ¶ 9). Once the CV extended its tender offer, the parties were to follow a "Structure Chart and Steps Plan" (SCSP) to properly effectuate the transaction (*id.* ¶'s 9, 47). Under the SCSP, the CV can only purchase the LPs interests *after* Banner Ridge subscribes for the interests in the CV equal to the purchase price to be calculated on the closing date (*id.* ¶'s 49, 50).

Banner Ridge alleges that Brightwood unilaterally designated August 15, 2023, as the date on which the purchase price was to be calculated, which is in breach of section 2.02 – The Closing – of the Transaction Agreement (*id.* ¶ 66). Further, Brightwood, rather than using Banner Ridge's contribution, instead had the CV borrow cash from defendants Brightwood Capital Fund III Holdings LP and Brightwood Capital Fund III-U, LP, as part of the payment in acquiring the LP interest (*id.* ¶'s 68, 74). Banner Ridge believes that Brightwood used Banner Ridge as a "backstop," and after learning that only 36% of the LPs would be exiting the funds, Brightwood acquired the LP interests for themselves and cut Banner Ridge out of the deal (*id.* ¶'s 69-70).

Brightwood, however, claims that Banner Ridge refused to close the transaction while Brightwood satisfied all the conditions to bring the transaction to close by the parties' agreed closing date of August 28, 2023 (NYSCEF # 75, Defts'

651756/2024   BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-INSTITUTIONAL, LP, ET AL
Motion No. 002

Page 2 of 7

2 of 7

MOL at 2). Brightwood asserts that the August 28, 2023 closing date was confirmed to Banner Ridge on August 8, 2023, with no objection from Banner Ridge (*id.* at 5 citing NYSCEF # 76, Selassie aff ¶ 11).[1] Given the August 28 closing date, Brightwood had 12 days before closing to conduct several "pre-closing deliverables" such as calculating the purchase price for the LP's interest (Defts' MOL at 5). Brightwood claims that it had timely provided Banner Ridge the pre-closing deliverables by August 22, 2023, but Banner Ridge refused to close on August 28. The next day, Brightwood stressed the urgency of closing immediately or else Brightwood could lose a third-party financing that was part of the transaction (*id.* at 7-8). To ensure that the closing would occur, Brightwood claims that on August 31, it made further concessions to Banner Ridge which reduced the amount of the note under the Letter Agreement by $1 million, yet Banner Ridge refused to fund the purchase price needed for the closing (*id.* at 8). Given Banner Ridge's refusal to close despite the concessions Brightwood made to Banner Ridge, Brightwood had no choice but to fund 50% of the payment to the LPs (*id.* at 8-9).

Brightwood claims that despite Banner Ridge's refusal to close by the end of August, Brightwood nonetheless expected that the parties would resolve the outstanding issues and move toward closing the transaction. Brightwood asserts that to that end, Brightwood made another concession to Banner Ridge by shortening the maturity date of the note (*id.* at 9; Selassie aff ¶ 34). The End Date elapsed; nonetheless, the parties scheduled the closing for September 20, 2023.

Two days before the rescheduled closing date, Brightwood informed Banner Ridge that a "reimbursement agreement" is needed for the 50% payment that Brightwood had paid to the LPs; Banner Ridge signed the reimbursement agreement the next day (Selassie aff ¶ 36). Further issues and discussions ensued and were resolved except for one amendment, which Brightwood claims would materially change the Transaction Agreement (*id.* ¶'s 36-41). Banner Ridge did not sign the Amended Transaction Agreement and refused to close on September, 22, 2023. Given that the closing did not occur by the End Date, or September 22, the adjourned date, Brightwood terminated the Transaction Agreement on September 24, 2023 (*id.* 43; complaint at 10).

BRP's co-founder and partner, Christopher J. Dreissen, received a letter from Brightwood's principal, Sengal Selassie, informing him that Brightwood was terminating the transaction pursuant to section 11.01(c)(ii) (Driessen Aff ¶ 25). Under that section, the parties are entitled to terminate the agreement if the transaction does not close by the "End Date" of September 14, 2023 *and* the terminating party's breach is not the "primary cause of the failure of the consummation of the transaction" (Dfts' MOL at 4). From Banner Ridge's perspective, however, the transaction is still ongoing since Brightwood's

---

[1] Defendants also cite NYSCEF # 80, email chain between the parties' attorneys, but those emails are dated 9/19 and 9/20, regarding a September closing).

**651756/2024   BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-INSTITUTIONAL, LP, ET AL**
**Motion No.  002**

**Page 3 of 7**

termination was invalid, which perspective was imparted to Brightwood (Driessen Aff ¶ 32). Both parties continued negotiations and work toward closing the transaction until mid-February, 2024 (Driessen Aff ¶'s 33-41; Selassie Aff ¶'s 44-50).

Plaintiff's commenced this action in April, 2024 seeking specific performance pursuant to section 12.11 of the Transaction Agreement:

> "Specific Performance: Each of the Parties agrees that this Agreement is intended to be legally binding and specifically enforceable pursuant to its terms and that the Parties would be irreparably harmed if any of the Agreement are not performed in accordance with their specific terms and that monetary damages would not provide adequate remedy in such event. Accordingly, in addition to any other remedy to which a non-breaching Party may be entitled at Law, a non-breaching Party shall be entitled to injunctive relief without the posting of any bond to prevent breaches of the Agreement ant to specifically enforce the term and provisions hereof Each Party further waives any defense that a remedy at Law would be adequate in any action or Proceeding for specific performance or injunctive relief hereunder.

(NYSCEF # 3, Transaction Agreement at 44 § 12.11). Thus, plaintiffs seeks to enforce the specific performance provision of the Transaction Agreement based on the agreed upon irreparable harm arising from a breach of this contract that forecloses consummation of this transaction (Pltfs' MOL at 3).

## DISCUSSION

As a preliminary matter, the parties' choice of law under the parties' Letter Agreement is Delaware law (NYSCEF # 4, Letter Agreement; Plfts' MOL at 15; Dfts' MOL at 17). Plaintiffs' motion is for a mandatory injunction that seeks specific performance as provided in the parties' Transaction Agreement section 12.11. Defendants, also going by the Transaction Agreement, claims that they properly terminated the Transaction Agreement pursuant to section 11.01 (c)(2).

A preliminary injunction under Delaware law is an extraordinary remedy (*see e.g. Louisiana Municipal Police Employees' Retirement System v Crawford*, 918 A.2d 1172, 1185 [Ch Ct, Del 2007] [a preliminary injunction is an extraordinary relief]) which is similar to that under New York law (*see e.g. City of New York v 330 Continental LLC*, 60 AD3d 226, 234 [1st Dept 2009] [a preliminary injunction is a drastic relief]). Entitlement to a preliminary injunction under Delaware law requires proof of the following: "(i) a reasonable probability of success on the merits; (ii) a threat of irreparable injury if an injunction is not granted; and (iii) that the balance of equities favors the issuance of an injunction" (*Sunder Energy, LLC v Jackson*, 305 A3d 723, 744-745 [Ch Ct, Del 2023]).

651756/2024  BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-INSTITUTIONAL, LP, ET AL
Motion No. 002

Page 4 of 7

4 of 7

[* 4]

In seeking specific performance, plaintiffs' motion is for a mandatory injunction because the relief sought is ultimate, such as after a trial or after submission of evidence leaving no material questions warranting summary judgment. Therefore, there is a "higher mandatory injunction standard" when, rather than "seeking to preserve the status quo as interim relief, [plaintiffs] . . . seek the very relief that they would hope to receive in the final decision on the merits" (*BlackRock Credit Allocation Income Trust v Saba Capital Master Fund, Ltd.*, 224 A3d 964, 976-977 [Sup Ct, Del 2020]). The higher mandatory injunction standard requires plaintiffs to make "a sufficient showing to support a grant of summary judgment" (*id.* at 977).

*Reasonable Probability of Success on the Merits*

In assessing the first prong of the preliminary injunction standard, the first item under review is the parties' Transaction Agreement under which the parties are to conduct their respective obligations and under which plaintiffs seek specific performance. "[A] party seeking specific performance 'must establish that (1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balances of equities tips in the favor of the party seeking specific performance" (*Osborn ex rel. Osborn v Kemp*, 991 A2d 1153, 1158 [Del. 2010]). Plaintiffs argue that the Transaction Agreement is a clear and complete document and must be enforced according to its terms (*see Rhone-Poulenc Basic Chemicals Co v American Motorists Ins. Co.*, 616 A2d 1192, 1195 [Sup Ct, Del 1992] [an agreement's "[c]lear and unambiguous language . . . should be given its ordinary and usual meaning" [citations omitted]).

Plaintiffs argue that defendants' termination is invalid (Driessen Aff ¶ 32). Plaintiffs proffer the CV's noncompliance with the SCSP, the defendants' unilateral calculation of the purchase price, and unilateral change of the closing date as the breaches of the Transaction Agreement that prevented a closing (Driessen Aff ¶¶ 21–28). Additionally, plaintiffs allege that the defendants delayed the closing through other actions including failure to exercise best efforts (*id.*).

Defendants argue that the alleged breaches could not have been the primary cause of the transaction's failure to close because the issues of their noncompliance with the SCSP and their unilateral calculation of the purchase price only arose *after* the "End Date" – the deadline for the transaction's closing (Dfts' MOL at 15-16). Defendants assert that the delays in closing were not related to their direct acquisition of the LP interests or the other alleged breaches (*id.* at 16). According to defendants, plaintiffs did not raise these issues until after the End Date (*id.*). Defendants further contend that, because this is a fact-intensive case with a litany of disputed facts, it is premature to determine at this stage that defendants failed to use "reasonable best efforts" to close (*id.*). And defendants note that plaintiffs have

651756/2024   BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-
INSTITUTIONAL, LP, ET AL
Motion No.  002

Page 5 of 7

5 of 7

not identified the "primary cause" for the transaction's failure to close by the End Date (*id.* at 2).

Under section 11.01 of the Transaction Agreement, a party may terminate the agreement if the transaction does not close by the "End Date" *and* the terminating party's breach is not the "primary cause of the failure of the consummation of the transaction" (Defts' MOL at 4). To demonstrate a likelihood of success on the merits, therefore, plaintiffs must demonstrate not only that defendants breached the Transaction Agreement but that the defendants' breach is the primary reason that the transaction failed to close.

The issue, then, is whether the alleged breaches by defendants the primary reason the transaction failed to close? If defendants validly terminated the agreement because the transaction failed to close for reasons other than the alleged breaches, then the agreement has come to an end and cannot be enforced under a specific performance remedy.

Here, plaintiffs claim that defendants breached the Transaction Agreement by: (1) excluding the plaintiffs from the deal, (2) unilaterally calculating the purchase price, (3) failing to use "reasonable best efforts" to close the transaction, and (4) improperly allowing the transfer and sale of the LP interests to the CV without the plaintiffs' consent (Plfts' MOL at 10-11). Defendants, on the other hand, have shown a back-and-forth working relationship by both parties to reach a closing in August and again in September before and after the End Date (*see e.g.* NYSCEF # 84, email chain regarding the August 28 closing; NYSCEF # 87, email chain regarding concessions from Brightwood to Banner Ridge; NYSCEF #'s 88, 89, email chains regarding September 20 closing).

The emails between the parties' attorneys evidence negotiations and concessions between the parties. And the attorneys drafting and redrafting of documents, and calculating and recalculating of numbers show that both sides made concerted efforts to effectuate the closing in August and again in September, until September 20. This evidence does not support plaintiffs' claim that the breach is defendants' exclusion of plaintiffs from the deal prior to the End Date, and certainly not after the End Date. As for the unilateral calculation of the purchase price or defendants' transfer of funds to buy the LPs' interest, defendants show that plaintiffs' refusal to close in August caused defendants to fund the CV to buy the LPs' interest or risk losing a third party investor that was part of this deal.

However, because the parties worked on getting the transaction to close after the August 28 date, it does not appear that the plaintiffs' allegations constituted the breaches that stopped the transaction from closing. It appears, at this juncture, that the straw that broke the transaction occurred on September 20 when Banner Ridge

651756/2024  BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-
INSTITUTIONAL, LP, ET AL
Motion No. 002

Page 6 of 7

insisted on and Brightwood opposed to including section 1.5 to the amendment[2]. While the substance of the amendment and Section 1.5 will not be addressed here, it seems to have caused the impasse that ended the parties' effort to close the transaction (see NYSCEF # 89, emails indicating impasse over Section 1.5 of the amendment). Further, in that the parties worked collectively to close on September 20 – after the September 14 End Date – and given the concessions defendants made, it cannot be said at this juncture that defendants failed to use "reasonable best efforts" as plaintiffs allege (Driessen Aff ¶ 20).

In sum, a preliminary injunction, let alone a mandatory injunction calling for specific performance, is not warranted when plaintiffs have not shown that a reasonable probability of success on the merits on their claim that defendants' alleged breaches were the "primary cause of the failure of the consummation of the transaction," while defendants have raised issues of fact challenging plaintiffs' assertion. In so concluding, the remaining issues of the parties' respective arguments on irreparable harm, a subject that is encompassed in the Transaction Agreement's provision on specific performance, and balance of the equities are academic and will not be addressed at this point.

## CONCLUSION

Accordingly, it is ORDERED that plaintiffs' motion for a preliminary injunction (MS 002) is denied; and it is further

ORDERED that counsel for plaintiffs are to serve defendants a copy of this Decision and Order with notice of entry within 7 days of this order, and it is

ORDERED that a preliminary conference shall be held via Microsoft Teams on September 18, 2024, at 11:30 a.m. or at such other time that the parties shall set with the court's law clerk, provided that the parties shall first meet and confer to stipulate to a preliminary conference order, available at https://www.nycourts.gov/LegacyPDFS/courts/comdiv/NY/PDFs/part49-PC-Order-fillable.pdf.

__August 20, 2024__
DATE

MARGARET A. CHAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

---

[2] The Amendment is not before this court.

**651756/2024   BR FUND IV ACQ INV, LLC, ET AL vs. BRIGHTWOOD CAPITAL FUND III-INSTITUTIONAL, LP, ET AL**
**Motion No.  002**

**Page 7 of 7**

[* 7]